**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X          DKT# 1:22‑cv‑08689

CARLOS ALVAREZ                                                                THIRD
                                                                              AMENDED COMPLAINT

                                        Plaintiff(s),

          -against-
                                                                              Plaintiff demands trial
                                                                                by Jury of all issues
                                                                                triable by Jury


THE CITY OF NEW YORK,  POLICE OFFICER (P.O.)
ALEXIS SOTO, Shield Number 13519, (in her individual and official capacity)
P.O. JONATHAN KATZ, (in his individual and official capacity)
P.O. CARLOS RIVERA, (in his individual and official capacity),
 P.O. ABUHAIKAL MUHAMMAD, (in his individual and official capacity)
THE BRONX DISTRICT ATTORNEY'S OFFICE and ASSISTANT
 DISTRICT ATTORNEY  JENNIFER  KIM, (in her individual and official capacity)


                              Defendant(s)

---------------------------------------------------------------------X

Plaintiff, by his attorney, Rehan Nazrali, Esq., alleges for his complaint against the

Defendants upon information and belief:

                                    **INTRODUCTION**

    1. This is an action at law to redress the deprivation by Defendants, acting under color

of statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity

secured to Plaintiff by the First, Fourth and Fourteenth Amendments to the Constitution of

the United States of America with intent to deny Plaintiff his civil rights, all of which arise

under Federal Law, particularly Title 42 U.S.C. §§ 1983 and 1988, and the Constitution,

Laws and Statutes of the United States and the State of New York.

                                            1

**JURISDICTION AND VENUE**

2.   This action arises under the United States Constitution, particularly under the provisions of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States,

and under Federal law, particularly Title 42 of the United States Code, §§ 1983, 1988. This Court also has jurisdiction of this case under and by virtue of Title 28 of the United States Code, §§ 1331, 1342 (4) and 1343.

3.   Venue is proper in this district under 28 U.S.C. § 1391(b).

**PARTIES**

4.   At all times relevant hereto the Plaintiff Carlos A. Alvarez, was and is a resident of the Dominican Republic.

5.   Defendant the City of New York ("the City") is a municipal entity created and authorized under the laws of the State of New York. The City is authorized by law to maintain a police department, and does maintain the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

6.   Defendant the City was also at all relevant times herein authorized to act through the Bronx County District Attorney's Office ("Bronx DA's Office") in regard to investigation, evaluation, and prosecution of alleged criminal conduct within Bronx County.

7.   The Bronx DA's Office was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York to investigate and prosecute criminal conduct within Bronx County.

8.     Defendant Bronx County Assistant District Attorney ("ADA") JENNIFER KIM, was at all times relevant herein a duly appointed and acting ADA of the Bronx DA's Office, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances regulations, policies, customs, and usage of the City of New York and the State of New York. She is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. She is being sued in her official and individual capacity.

9.     That at all times hereinafter mentioned the defendant, The Bronx County District Attorney's office, was and still is an agency and/or department of the City of New York, authorized and existing under and by virtue of the laws of the City and State of New York.

10.     Defendant Police Officer ALEXIS SOTO (SOTO) was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his individual capacity.

11.     Defendants P.O. Jonathan Katz (hereinafter "Katz"),  P.O. Carlos Rivera (hereinafter "Rivera"),  P.O. Abuhaikal Muhammad (hereinafter "Muhammad"), was at all times relevant to this Complaint a duly appointed and acting Police Officers of the NYPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. They are entitled to indemnification under New York General Municipal Law Section 50-k and by contract. They are being sued in their official and   individual capacities. That said individual Defendants were acting under color of state law, under color of the statutes, ordinances, regulations, policies, and

customs and usages of the City of New York.

### FACTS

12.     On May 15, 2010, Plaintiff, while driving a white Dodge Caravan and three other traveling companions  were hit from behind by another driver who attempted to flee without providing his insurance information.

13.     Plaintiff and his three companions followed the driver to inform him of his duty to stop and provide his insurance information.

14.     When the driver was forced to stop at an intersection due to road construction and traffic lights. Plaintiff and his companions approached the driver on foot until Plaintiff, fearing a confrontation could ensue, instructed his companions to return to their vehicle.

15.     Plaintiff then had a brief conversation in Spanish with the other driver and female companion. Plaintiff then returned to his vehicle. After driving away,  they were stopped and arrested by SOTO along with defendants  KATZ, RIVERA, and MUHAMMAD, all from the NYC Housing Authority Intelligence Unit of the 40th Precinct of the NYPD in Bronx County.

16.     Plaintiff and his companions were not doing anything illegal but were forcefully extracted from their vehicle, handcuffed, and made to kneel execution style on the street with the officers' guns drawn and ready to kill. Even though officers  KATZ, RIVERA, and MUHAMMAD knew or should have known that there was no probable cause to arrest Plaintiff, they nonetheless failed to intervene in Plaintiff's unlawful arrest

17.     At the time of the arrest, the defendant Police Officers SOTO, KATZ, RIVERA, and MUHAMMAD did not interview Plaintiff or his three companions. All four officers approached the complaining victim and took his statement but then, all four officers, without justification, did not make any inquiries regarding the facts of the incident with

either Plaintiff or his companions.  The defendant officers further refused to expressly elicit and or accept any exculpatory explanation from Plaintiff or his companions but against proper police practice immediately concluded that Plaintiff had committed a crime and placed him under arrest.  Had the defendant Police Officers SOTO, KATZ, RIVERA, and MUHAMMAD conducted a proper investigation, to wit, interviewing Plaintiff and his companion before arresting Plaintiff, they would have realized that there was no probable cause to arrest plaintiff.

*18.*    Once at the Precinct, Police Officer SOTO, falsely stated to Detective ANNETTE FRACESQUINI that while on routine patrol, she observed a "*male Hispanic in a vehicle with a knife and he was pointing the knife at the victim. That the other three men were trying to force themselves into the vehicle and when they saw the police they forcibly removed c/v's property and began to walk to their vehicle*"

*19.*    There was no evidence to prove arresting officer SOTO's allegations that Plaintiff and his companions were following the hit-and-run driver because they wanted to "*carjack the vehicle.*"

20.    The driver perpetrated this "*carjacking*" and "*robbery with a knife*" narrative in order to hide his liability for the hit and run car accident.

21.    After SOTO spoke to the hit-and-run driver, SOTO somehow found a knife and a backpack with possessions worth no more than $80.

22.    At no time did Plaintiff or his companions enter the driver's car and steal his chattel. Nor did they threaten the driver with a knife.

23.    At the 40th Pct. police station, Police Detective Annette Francesquini (hereinafter, "Francesquini") (263-40 DET SQUAD) informed Plaintiff that there was no "carjacking," but it was up to SOTO to decide whether Plaintiff and his companions could be released or not.

24.     On June 21, 2010, Plaintiff was arraigned in Supreme Court of Bronx County for 21 counts of crimes including robbery, assault, unlawful imprisonment, and criminal possession of a weapon.

25.     Following his arraignment, Plaintiff's first attorney abandoned him to his fate and Plaintiff did not have counsel for almost two years while incarcerated.

*26.*     SOTO lied and fabricated the story of *"carjacking"* and *"robbery"* because SOTO initially reported to Francesquini that (a) *"she observed a male Hispanic in a vehicle with a knife and he was pointing the knife at the victim,"* and (b) *"the other three men were trying to force themselves into the vehicle and when they saw police, they forcibly removed . . . property and began to walk to their vehicle,* and (c) *"she apprehended all perpetrators at the scene."*

27.     SOTO's testimony in court contradicted what she stated to Francesquini. SOTO falsely testified  in court that she first encountered Plaintiff and his companions when they were in *their vehicle* and forcibly extracted them.

28.     However, on the court's record, SOTO fabricated the crime of Robbery in the First Degree and fabricated evidence of the crime.

29.     SOTO admitted in court that she did not wear gloves when she handled the knife or backpack, thereby contaminating the evidence.

30.     SOTO admitted in court that neither she nor her supervisors requested any scientific tests to determine if Plaintiff had handled key evidence including the knife and backpack.

31.     That Defendant SOTO admitted in court that neither she nor her supervisors requested any scientific tests to determine if Plaintiff had handled key evidence including the knife and backpack.

32.     During the first trial, ADA KIM realized that the jury was going to acquit the Plaintiff because key witnesses could not identify Plaintiff in court and arresting officer SOTO became hyperactive and hysterical when she was confronted by the defense attorney regarding the fact that SOTO did not preserve the integrity of the evidence (the knife) that the Plaintiff allegedly used in the crime of Robbery in the First Degree.

33.     The Prosecutor, ADA KIM, knowingly allowed SOTO to perjure herself regarding the fabricated crime and evidence to the court and the jury thereby suborning perjury.

34.     ADA KIM deliberately provoked a mistrial because she knew that she had committed an illegal act i.e. suborning perjury.

35.     Because ADA KIM's actions were calculated to cause a mistrial, the second trial should not have taken place.

36.     The court later learned that prosecutor ADA KIM had instructed the prosecuting witness to identify the Plaintiff by showing her a single picture of the Plaintiff.

37.     The Court appointed a new attorney for Plaintiff almost two years and four months following his arrest and incarceration.

38.     Plaintiff's second attorney could not remain his counsel and a third lawyer was appointed to represent him. At least five Assistant District Attorneys acted as the Prosecutor against Plaintiff.

39.     Plaintiff's second trial was ordered by the presiding Judge, Honorable Efrain Alvarado.

40.     On December 13, 2013 Plaintiff was found guilty of Robbery in the First Degree and acquitted of all the other charges, or the other charges were dismissed.

41.     Significantly, the charge of Petit Larceny, which allegedly involved the exact same property as in the charge of Robbery in the First Degree, was dismissed.

42.     The dismissal of the Petit Larceny charge is irrefutable evidence that the crime of

Robbery did not take place and could not have taken place as the property allegedly stolen

in both crimes was identical.

43.     After Plaintiff was pronounced guilty of Robbery in the First Degree, he requested his

third lawyer to file for entitled relief to which the lawyer refused to do so.

44.     Plaintiff, who neither speaks nor writes English, asked for help in the Law Library of

the Vernon Bain Detention Center, and submitted a motion to set aside the verdict of guilty

for the crime of Robbery.

45.     On January 31, 2014, the Plaintiff was appointed a fourth attorney to assist in

submitting the motion to set aside the verdict.

46.     The fourth attorney was unable or unwilling to prepare the motion and Plaintiff

remained incarcerated for more than four years since his arrest.

47.     The evidence of the crime of Robbery allegedly committed by Plaintiff was fabricated

by the Defendant SOTO in violation of Plaintiff's fundamental right to be secure in his

person pursuant to the Fourth and Fourteenth Amendments of the U.S. Constitution and

Section 12 of the New York Constitution.

48.     Defendant SOTO was later suspended for unknown infractions.

49.     Plaintiff was incarcerated from the day of his arrest in 2010 until 2021 when the court

reversed his convictions because it determined Plaintiff's retrial violated constitutional

prohibitions against double jeopardy.


**AS AND FOR A FIRST CAUSE OF ACTION FOR MALICIOUS PROSECUTION
UNDER CIVIL RIGHTS LAW 42 USC §1983 BEHALF OF PLAINTIFF AS
AGAINST NEW YORK CITY, POLICE OFFICERS SOTO, KATZ, RIVERA,
MUHAMMAD, THE BRONX COUNTY DISTRICT ATTORNEY'S OFFICE
AND ASSISTANT DISTRICT ATTORNEY KIM.**

50.    The Plaintiff hereby incorporates by reference each and every preceding paragraphs

1 through 49 of this Third Amended Complaint as though fully pleaded and re-alleged in

their entirety below.

51.    That the City of New York, through its Bronx DA's Office's institution and

implementation of plainly inadequate or unlawful policies, procedures, regulations,

practices, and customs concerning:

52.    That the City of New York through its Bronx DA's Office's deliberate indifference to

the need (of which it has failed) to adequately instruct train, supervise, and discipline its

employees with respect to such matters.

53.    That the City of New York's through its Bronx DA's Office's aforesaid deliberate

or de facto policies, procedures, regulations, practices and customs, including the failure

to properly instruct, train, supervise, and discipline employees with regard thereto, were

implemented or tolerated by policymaking officials for Defendant City, including the

Bronx County District Attorney and his delegates, who knew:

i    To a moral degree of certainty that such policies, procedures, regulations,

practices and customs concern issues that regularly arise in the investigation and

prosecution of criminal cases;

ii    That such issues present employees with difficult choices of the sort that

instruction, training, supervision, and discipline will make correct choices

less difficult and incentivize making correct choices;

iii    That the making of wrong choices by municipal employees concerning

such issues will frequently cause the deprivation of the constitutional rights of an accused

and cause him or her constitutional injury; and

iv    That employees of the Bronx DA's Office had a long history of making

wrong choices in such matters.

54.     That the City of New York, through its Bronx DA's Office's policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon:

       i     Numerous credible allegations, many of which were substantiated by judicial decisions that the Bronx DA's Office ADAs had:

       1     Participated in the manufacturing of false testimony or evidence;

       2      Presented or failed to correct false or misleading testimony and argument;

       3      Failed to disclose information favorable to the defense that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York; and

       4.      The inherent obviousness of the need to train, supervise, and discipline ADAs in their aforementioned constitutional obligations to counteract the inherent pressure on prosecutors to obtain convictions.

55.     That at the time of Plaintiff's prosecution, the City of New York, through its Bronx DA's Office's indifference was aware of the  aforementioned types of prosecutorial misconduct.

56.     That the City of New York, instead of disciplining such prosecutors for the aforementioned types of prosecutorial misconduct, the City of New York through the Bronx County District Attorney's policy, custom, or practice was to give them raises, promotions and commendations, based in part on their record of securing indictments, winning at trial and extracting guilty pleas, even in weak cases or cases (like Plaintiff's) where reasonable grounds did not exist to believe the defendant committed the offense charged.

57.     Thus, prosecutors were incentivized to violate the constitutional rights of criminal defendants, since they knew they were likely to be rewarded for winning but would suffer no negative consequences if it ever became known that they were violating the rights of the defendants they were prosecuting.

58.     Further encouraging prosecutors to win at any cost was their knowledge that the City of New York and the Bronx DA's Office had no employee handbook or other published procedure for disciplining prosecutors who violated rules of behavior for criminal prosecutions.

59.     Indeed, prosecutors were emboldened to violate basic constitutional provisions protecting criminal defendants' constitutional right to a fair trial by their knowledge that the Bronx County District Attorney's was willing to pursue or tolerate policies, customs, and practices that brazenly violated criminal defendants' fundamental constitutional rights.

60.     Evidence of the City of New York and the Bronx County District Attorney's deliberate indifference to prosecutorial misconduct violative of a criminal defendants' constitutional rights, including the making of false or misleading arguments to a jury, and withholding information favorable to the defense was uncovered during the civil rights litigation in *Ramos v. City of New York*, 285 A.D.2d 284 (1st Dept 2001), a case involving the wrongful conviction of a young man due to the knowing use of false evidence and argument and *Brady* violations. During that litigation, discovery of Bronx DA's Office personnel records, together with deposition testimony, showed that in approximately 72 cases where courts had found prosecutorial misconduct occurred (including the use of and failure to correct false or misleading testimony and *Brady* violations), officials could only identify one prosecutor from between 1975 and 1996 who had been disciplined in any respect for misbehavior while prosecuting a criminal case. Discovery also revealed that

that the Bronx DA's Office had no meaningful disciplinary policy, procedure, training, or practice: and that the Bronx DA's Office trained prosecutors in blatantly unlawful practices to prevent disclosure of evidence favorable to criminal defendants under *Brady*.

61.     Further evidence of the City of New York and the Bronx County District Attorney's deliberate indifference to prosecutorial misconduct was uncovered in the companion lawsuits *Poventud v. City of New York,* 07 Civ. 3998 (DAB)(THK) (U.S.D.C. S.D.N.Y.) and *Maldonado v. City of New York*, No. 17568- 2004 (N.Y. Sup. Ct. Bronx Co. filed June 14, 2004), which also involved the knowing use of false evidence and argument and committing *Brady* violations by the Bronx DA's Office. Counsel in these cases reviewed personnel files for Bronx DA's Office cases where prosecutor misconduct had been found from between 1989 through 2006 and did not discover any documentary evidence of disciplinary action ever being taken against the prosecutors.

62.     The discovery obtained in the *Ramos, Poventud,* and *Maldonado* lawsuits is summarized in Joel B. Rudin, *The Supreme Court Assumes Errant Prosecutors Will Be Disciplined by Their Offices or the Bar: Three Case Studies That Prove That Assumption Wrong*, 80 Fordham L. Rev. 537, 544-558 (2011), which is incorporated herein by reference. Notwithstanding the disclosure and recognition of the unconstitutional prosecutorial practices of the Bronx DA's Office that resulted from those cases, the Bronx County District Attorney's deliberately indifferent policies, customs, and practices continued.

63.     The City of New York and the Bronx County District Attorney's policy, custom and practice of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of defendant's constitutional rights, including that of Plaintiff, foreseeably encouraged such violations to continue and was a substantial cause of the

violations of Plaintiff's constitutional rights beginning with the initiation of a criminal prosecution against him without probable cause and continuing throughout his criminal proceedings and trial.

64.     The aforesaid policies, procedures, regulations, practices, and customs of Defendant City were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and Laws of the United States and in causing his damages.

65.     Under the principles of municipal liability for federal civil rights violations, the City of New York through its Bronx County District Attorney (or his authorized delegates) has final managerial responsibility for training, instructing, supervising, and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including but not limited to, their obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosure of exculpatory evidence to the defense, to refrain from offering false or misleading evidence, testimony mad argument during pretrial and trial proceedings, and to correct such false or misleading evidence, testimony, and argument when they become aware of it.

66.     The City of New York through its Bronx County District Attorney, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to his Office's performance of its duties.

67.     The Bronx County District Attorney, at all relevant times, was and is an elected officer of Bronx County, one of the constituent counties of Defendant City; the Office was and is funded out of the City's budget; and the Office was and is a New York City agency.

68.     The Bronx County District Attorney was and is designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2; New York has provided by statute (New York County Law §§ 53, 941) that Defendant City's constituent counties (including Bronx County), and hence Defendant City has liability for torts committed by County officers and employees, such as the Bronx County District Attorney and his assistants, and Defendant City represents such officers and employees in judicial proceedings and indemnifies them because they are City officials.

69.     The Bronx County District Attorney personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

70.     During all times material to this Complaint, the City, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

71.     By virtue of the foregoing, Defendants City and Bronx District Attorney's Office are liable for having substantially caused the foregoing violations of Plaintiff's constitutional rights and his resultant injuries.

72.     That at all relevant times  Police Officers KATZ, RIVERA, AND MUHAMMAD were agents of the CITY and NYPD and acting within the scope of their duties as law enforcement officers

73.     That Defendant Police Officers KATZ, RIVERA, and MUHAMMAD, at all relevant times, were motivated by actual malice.

74.     At all relevant times, defendant Police Officers KATZ, RIVERA, and MUHAMMAD actions were motivated by bad faith, actual malice, and were not justified, excused or privileged.

75.     That the aforementioned subject individual defendants' actions were committed under color of state law and that these acts 'deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.'

76.     By the reason of the foregoing, Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous attacks and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and has incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of such said injuries; and has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and will be unable to pursue his usual duties with the same degree of efficiency as prior to this occurrence all to his great damage.

77.     Defendant Police Officers, with malice and knowing that probable cause did not exist to arrest Plaintiff and prosecute him for the false criminal charges brought against him, acting individually and in concert, caused Plaintiff to be falsely arrested, charged, and prosecuted for those crimes, thereby violating Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures and to be free of prosecution absent probable cause.

78.     That the Defendant Police Officers KATZ, RIVERA, AND MUHAMMAD had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by another police officer.

79.     That said Defendants failed to intervene to prevent the unlawful conduct described

herein.

80.     That officer SOTO's actions were committed under color of state law and that these

acts "deprived the plaintiff of rights, privileges, or immunities secured by the Constitution

or laws of the United States."

81.     That police officers KATZ,  RIVERA, AND MUHAMMAD who were present while

Plaintiff was wrongfully arrested by fellow police officer SOTO failed to intervene to

prevent other law enforcement officers (SOTO) from infringing the constitutional rights of

Plaintiff and are therefore liable under § 1983 as that KATZ, RIVERA, AND

MUHAMMAD had reason to know: (1) that a false arrest, malicious prosecution and

unconstitutional imprisonment was being made and occurring thereto in their presence, (2)

that constitutional violations had been committed by a law enforcement official to wit:

SOTO.

82.     Specifically, these Defendants, acting individually and in concert, fabricated

evidence and intentionally withheld from and misrepresented to Plaintiff's defense

counsels, the court, grand juries, and Plaintiff's trial juries, exculpatory facts that vitiated

probable cause against Plaintiff and would have impeached witnesses for the prosecution

at trial.. These Defendants also deliberately failed to conduct a constitutionally adequate

investigation in light of evidence clearly establishing that there was no probable cause to

arrest Plaintiff.

83.     These Defendants performed the above-described acts under color of state law,

intentionally, with reckless disregard for the truth, and with deliberate indifference to

Plaintiff's  clearly  established  constitutional  rights.  No  reasonable  officer  would  have

believed this conduct was lawful.

16

84.    As a direct and proximate result of these Defendants' actions, Plaintiff spent TEN

years wrongfully convicted and imprisoned and suffered the other grievous and

continuing damages and injuries set forth above.

85.    That at all relevant times, Police officers SOTO, Katz, Rivera, Muhammad, and ADA

KIM were agents of the City and or NYPD and acting within the scope of their duties as

law enforcement officers and prosecutors.

86.    That the City and the Bronx District Attorney's Office  by and through their agents,

servants and employees, Police officers SOTO, Katz, Rivera, Muhammad, and ADA KIM

initiated and continued a criminal proceeding against Plaintiff in bad faith, insofar as these

police officers and prosecutor, upon review and investigation of the facts of the within

matter became and or were made aware or should have been aware of exculpatory and or

exonerating evidence in Plaintiff's favor, to wit,  preceding the initiation of criminal

proceedings, their actual awareness that no crime had been committed by Plaintiff and

notwithstanding same pursued and or initiated his prosecution by presenting incomplete,

incorrect information to the city Prosecutor, which, because of the suppression of evidence

or other law enforcement conduct undertaken in bad faith, lacked and was without probable

cause.

87.    That the criminal proceedings and prosecution thereto terminated completely in

Plaintiffs favor on or before Oct 19, 2021.

88.    That the City and the Bronx County District Attorney's Office lacked probable cause

to commence and to continue the criminal proceeding against Plaintiff since, at all relevant

times, the City, SOTO, KATZ, RIVERA, MUHAMMAD, and ADA KIM, knew, or

possessed information during her investigation of the facts of the case that Plaintiff's

prosecution for the aforementioned charges lacked probable cause and that defendants

could not evince any facts or circumstances which could lead a reasonable person to believe that Plaintiff was guilty of the crimes charged.

89. That the City and the Bronx County District Attorney's Office lacked probable cause to commence and to continue the criminal prosecution against the Plaintiff.

90. That the Defendants SOTO, KATZ, RIVERA, MUHAMMAD, and ADA KIM, at all relevant times, were motivated by actual malice.

91. At all relevant times, the defendants' actions were motivated by bad faith, actual malice, and were not justified, excused or privileged.

92. That the aforementioned individual subject individual defendants' actions were committed under color of state law and that these acts 'deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.'

93. By the reason of the foregoing, Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe mental anguish, and emotional upset, some of which injuries are permanent in nature and duration, and will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and has incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of such said injuries; and has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and will be unable to pursue his usual duties with the same degree of efficiency as prior to this occurrence all to his great damage.

94. That solely by reason of the above, the Plaintiff has been damaged in an amount that exceeds the jurisdictional limits of any other Court in which this action might be maintained.

## AS AND FOR A SECOND CAUSE OF ACTION FOR FAILURE TO INTERVENE  UNDER 42 USC § 1983 AS AGAINST POLICE OFFICERS KATZ, RIVERA, AND MUHAMMAD.

95.     The plaintiff repeats the allegations of the foregoing paragraphs numbered 1 through 94 with the same effect as though set forth herein at length.

96.     That the Fourth Amendment and Fourteenth Amendment of the Constitution of the United States protects the right to be free from unreasonable searches and seizures; provides that warrants shall issue only upon probable cause, supported by oath or affirmation.

97.     That the Defendant Police Officers KATZ, RIVERA, AND MUHAMMAD had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by another police officer.

98.      That said Defendants failed to intervene to prevent the unlawful conduct described herein.

99.     That officer SOTO's actions were committed under color of state law and that these acts "deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."

100.     That police officers KATZ,  RIVERA, AND MUHAMMAD who were present while Plaintiff was wrongfully arrested by fellow police officer SOTO failed to intervene to prevent other law enforcement officers from infringing the constitutional rights of Plaintiff and are therefore liable under § 1983 as that KATZ, RIVERA, AND MUHAMMAD had reason to know: (1) that a malicious prosecution and unconstitutional imprisonment was being made and occurring thereto in their presence, (2) that constitutional violations had been committed by a law enforcement official to wit: SOTO.

101.   At all relevant times hereto, Plaintiff is informed and believes and thereon alleges that defendants City employed the aforementioned defendant police officers who were was at all times herein acting within the purpose and scope of such agency and employment and as such the City is liable for such officers, agents, servants and employees unconstitutional wrongful conduct thereto.

102.   By the reason of the foregoing, Plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe mental anguish, and emotional upset, some of which injuries are permanent in nature and duration, and will be permanently caused to suffer pain and inconvenience and other effects of such injuries; and has incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of such said injuries; and has suffered and in the future will necessarily suffer additional loss of time from his usual pursuits, duties and activities; and will be unable to pursue his usual duties with the same degree of efficiency as prior to this occurrence all to his great damage.

103.   By their conduct and under color of state law, Defendants KATZ, RIVERA, AND MUHAMMAD, had opportunities to intercede on behalf of Plaintiff to prevent his false arrest, malicious prosecution, false imprisonment, deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

104.   These Defendants' failures to intercede violated Plaintiff's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments.  No reasonable police officer or ADA would have believed that failing to intercede to prevent these Defendants from fabricating inculpatory evidence, intentionally using unduly direct suggestion and/or coercion to obtain witness identifications, withholding material, exculpatory and/or impeachment evidence, deliberately failing to conduct a constitutionally adequate investigation,

20

and causing Plaintiff to be arrested and prosecuted without probable cause, were lawful.

105.  As a direct and proximate result of these defendant's actions, Plaintiff spent TEN YEARS wrongly convicted and imprisoned and suffered the other grievous and continuing damages and injuries set forth above

105.    That solely by reason of the above, the Plaintiff has been damaged in an amount equal or in excess of the jurisdictional limits of this Court.

## AS AND FOR A THIRD CAUSE OF ACTION FOR UNCONSTITUTIONAL IMPRISONMENT UNDER 42 USC '1983 AS AGAINST DEFENDANTS CITY, BRONX DISTRICT ATTORNEY'S OFFICE, POLICE OFFICERS SOTO, KATZ, RIVERA, AND MUHAMMAD AND ADA KIM.

106.    Plaintiff repeats and reiterates the allegations of the foregoing paragraphs numbered 1 through 105 with the same force and effect as if herein set forth at length.

107.    That the Fourth and Fourteenth Amendments to the Constitution of the United States protects the right to be free protects from unreasonable searches and seizures; provides that warrants shall issue only upon probable cause, supported by oath or affirmation.

108.    That the above described unconstitutional imprisonment began after Plaintiff's arraignment June 21, 2010 until Plaintiff completed his sentence on November 13, 2020.

109.    Plaintiff's unconstitutional conviction or imprisonment was  reversed on direct appeal, expunged." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

110.    That just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional [*5]  conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90 (internal citations omitted).(Todd v Fields, 2022 US Dist LEXIS 34113, at *9-10 [SDNY Feb. 25, 2022])

111.    That the named defendants failed to intervene at any point during the course of Plaintiff's arrest through to his unconstitutional imprisonment and or confinement.

112.    That the plaintiff was aware that he was being confined.

113.    That the plaintiff did not consent to the confinement.

114.    That the confinement was not otherwise privileged.

115.    That at the subject times and place by the defendants City, Bronx District Attorney's Office through and/or by the actions of their agents, servants and employees, namely police officers SOTO, KATZ, RIVERA, MUHAMMAD and ADA KIM constitutes unconstitutional imprisonment in violation of Plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

116.    That at the time of Plaintiff's arrest, Defendant police officers SOTO, KATZ, RIVERA, MUHAMMAD and ADA KIM acted under color of law and were exercising their responsibilities pursuant to state law and under the directives of the Defendants City and Bronx District Attorney's Office.

117.    That at the time of Plaintiff's arrest, Defendants City and Bronx District Attorney's Office through and/or by the actions of its agents, servants and employees, namely police officers SOTO, KATZ, RIVERA, MUHAMMAD and KIM lacked probable cause: (a) to believe that Plaintiff had committed a crimes Plaintiff was ultimately charged with; and (c) to commence a criminal prosecution against Plaintiff on the false criminal charges described above.

118.    That at the time of Plaintiff's arrest, the Defendants City, NYPD and Bronx District Attorney's Office through and/or by the actions of their agents, servants and employees, namely Defendant police officers SOTO, KATZ, RIVERA, MUHAMMAD and KIM acted with malice

and hatred towards Plaintiff as the motivation for his fabricated and false charge of armed

robbery.

119.    That as a result of the false charges brought against Plaintiff, he was taken into police

custody and subjected to additional false grounds for false imprisonment.

120.    That at all relevant times hereto, Plaintiff is informed and believes and thereon alleges that

defendants City,  NYPD and Bronx District Attorney's Office employed the aforementioned

defendant officers and Def. KIM as agents, servants and employees of each of defendants City,

NYPD and Bronx District Attorney's Office who were at all times herein acting within the

purpose and scope of such agency and employment and as such the City is liable for such

officers, agents, servants and employees unconstitutional conduct thereto.

121.    That by reason of the foregoing, Plaintiff was injured; was rendered sick sore lame and

disabled; was and or will be caused to undergo medical treatment and advice; was unable to

pursue his usual and regular activities; and his injuries are permanent in nature and effect.


**FOURTH CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Civil Rights Conspiracy**
*Against* **SOTO, KATZ, RIVERA, MUHAMMAD and ADA KIM**

122.    Plaintiff repeats and reiterates the allegations of the foregoing paragraphs numbered 1

through 121 with the same force and effect as if herein set forth at length.

123.    Defendants SOTO, KATZ, RIVERA, MUHAMMAD and KIM acting within the scope of

their employment and under color of state law, agreed among themselves to act in concert in

order to deprive Plaintiff of his clearly established Fourth and Fourteenth Amendment rights to

be free from unreasonable searches and seizures, false imprisonment, malicious prosecution,

and deprivation of liberty without due process of law, and also deprived Plaintiff of his right to

a fair trial.

124.    In furtherance of the conspiracy, Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

 i       Falsely arresting and imprisoning Plaintiff, knowing that they lacked probable cause;

 ii      Fabricating inculpatory evidence in reports, statements, and pretrial communications with the prosecution, inculpating Plaintiff;

 iii     Suborning perjury during hearings and trials, and

 iv      Intentionally or with deliberate indifference failing to comply with their duty to disclose *Brady* material during the pendency of the case,

125.    Plaintiff is completely innocent of the false criminal charges brought against him by the defendants. The criminal case against Plaintiff was finally overturned on 10/19/21.

126.    As a direct and proximate result of Defendants' actions, Plaintiff was wrongfully convicted and unconstitutionally imprisoned for TEN years and suffered the other grievous and continuing damages and injuries set forth above

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983
*Monell* **Claim** *Against Defendant City of New York for the* **42 U.S.C. § 1983** *for* **Unconstitutional Policy, Custom, or Pattern and Practice of Promoting, Facilitating, or Condoning Improper, Illegal, and Unconstitutional Investigative Techniques and Failure to Supervise, Discipline and Training**
*Against Defendant City of New York for the Actions and Omissions of the BCDAO Defendants and the BCDAO*

127.    Plaintiff repeats and reiterates the allegations of the foregoing paragraphs numbered 1 through 126 with the same force and effect as if herein set forth at length.

128.    Beginning on or about May 10, 2010, members of the Bronx DA's Office, including ADA KIM, violated Plaintiffs constitutional rights and his resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct chargeable to a de facto policy,

custom or practice on the part of the Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiffs, subject to prosecution by the Bronx DA's Office, namely:

        i        The Bronx DA's Office's institution and implementation of plainly inadequate or unlawful policies, procedures, regulations, practices, and customs concerning:

        ii.       The duty not to initiate a criminal prosecution that is not based on probable cause;

        iii.      The duty not to create or to otherwise use false, misleading or unreliable evidence, testimony, statements or arguments during criminal proceedings;

        iv.      The obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument whenever such misconduct is discovered to have occurred;

        v.       The continuing obligation to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland*, 373 U.S.83 (1963), *Giglio v. United States*, 450 U.S. 150 (1972), and progeny; and

        vi.      Knowingly making false and misleading arguments during summation.

        vii.      The Bronx DA's Office's deliberate indifference to the need (of which it has failed) to adequately instruct, train, supervise, and discipline its employees with respect to such matters.

129.    The aforesaid deliberate or de facto policies, procedures, regulations, practices and customs, including the failure to properly instruct, train, supervise, and discipline employees

with regard thereto, were implemented or tolerated by policymaking officials for Defendant City, including the Bronx County District Attorney and his delegates, who knew:

    i    To a moral degree of certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

    ii    That such issues present employees with difficult choices of the sort that instruction, training, supervision, and discipline will make correct choices less difficult and incentivize making correct choices;

    iii    That the making of wrong choices by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him or her constitutional injury; and

    iv  That employees of the Bronx DA's Office had a long history of making wrong choices in such matters.

130.    The aforesaid policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon:

    i    Numerous credible allegations, many of which were substantiated by judicial decisions that the Bronx DA's Office ADAs had:

    1    Participated in the manufacturing of false testimony or evidence;

    2    Presented or failed to correct false or misleading testimony and argument;

    3    Failed to disclose information favorable to the defense that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York; and

4.   The inherent obviousness of the need to train, supervise, and discipline ADAs in their aforementioned constitutional obligations to counteract the inherent pressure on prosecutors to obtain convictions.

131.   At the time of Plaintiff's prosecution, the Bronx County District Attorney's indifference to the aforementioned types of prosecutorial misconduct was evidenced by his failure to: conduct internal disciplinary investigations; discipline the prosecutors who were known to engage in such misconduct; or refer such individuals for possible discipline by the Appellate Division's Disciplinary or Grievance Committees.

132.   Instead of disciplining such prosecutors for the aforementioned types of prosecutorial misconduct, the Bronx County District Attorney's policy, custom, or practice was to give them raises, promotions and commendations, based in part on their record of securing indictments, winning at trial and extracting guilty pleas, even in weak cases or cases (like Plaintiff's) where reasonable grounds did not exist to believe the defendant committed the offense charged.

133.   Thus, prosecutors were incentivized to violate the constitutional rights of criminal defendants, since they knew they were likely to be rewarded for winning but would suffer no negative consequences if it ever became known that they were violating the rights of the defendants they were prosecuting.

134.   Further encouraging prosecutors to win at any cost was their knowledge that the Bronx DA's Office had no employee handbook or other published procedure for disciplining prosecutors who violated rules of behavior for criminal prosecutions.

135.   Indeed, prosecutors were emboldened to violate basic constitutional provisions protecting criminal defendants' constitutional right to a fair trial by their knowledge that the Bronx County District Attorney's was willing to pursue or tolerate policies, customs, and practices that brazenly violated criminal defendants' fundamental constitutional rights.

136.    The BCDA's policy was to tolerate, fail to discipline, and encourage violations of his or her Office's constitutional obligation to not maliciously prosecute defendants.  The BCDA's deliberate indifference to such violations created an atmosphere that "anything goes" and prosecutions should be secured at all costs that caused such violations to continue, including in Plaintiff's case.

137.    Under the BCDAO's office-wide policies, customs, and practices, prosecutors and investigators were permitted and encouraged to avoid disclosing information favorable to the defense, despite the fact that disclosure of such information was and is constitutionally required.

138.    The BCDAO's training and discipline policies and practices were likewise consciously designed to permit and encourage malicious prosecutions.

139.    Evidence of the Bronx County District Attorney's deliberate indifference to prosecutorial misconduct violative of a criminal defendants' constitutional rights, including the making of false or misleading arguments to a jury, and withholding information favorable to the defense was uncovered during the civil rights litigation in *Ramos v. City of New York*, 285 A.D.2d 284 (1st Dept 2001), a case involving the wrongful conviction of a young man due to the knowing use of false evidence and argument and *Brady* violations. During that litigation, discovery of Bronx DA's Office personnel records, together with deposition testimony, showed that in approximately 72 cases where courts had found prosecutorial misconduct occurred (including the use of and failure to correct false or misleading testimony and *Brady* violations), officials could only identify one prosecutor from between 1975 and 1996 who had been disciplined in any respect for misbehavior while prosecuting a criminal case. Discovery also revealed that the Bronx DA's Office had no meaningful disciplinary policy, procedure, training, or practice: and that the Bronx DA's Office trained prosecutors in blatantly unlawful practices to prevent disclosure of evidence favorable to criminal defendants under *Brady*.

140.    Further evidence of the Bronx County District Attorney's deliberate indifference to prosecutorial misconduct was uncovered in the companion lawsuits *Poventud v. City of New York,* 07 Civ. 3998 (DAB)(THK) (U.S.D.C. S.D.N.Y.) and *Maldonado v. City of New York*, No. 17568- 2004 (N.Y. Sup. Ct. Bronx Co. filed June 14, 2004), which also involved the knowing use of false evidence and argument and committing *Brady* violations by the Bronx DA's Office. Counsel in these cases reviewed personnel files for Bronx DA's Office cases where prosecutor misconduct had been found from between 1989 through 2006 and did not discover any documentary evidence of disciplinary action ever being taken against the prosecutors.

141.    The discovery obtained in the *Ramos, Poventud,* and *Maldonado* lawsuits is summarized in Joel B. Rudin, *The Supreme Court Assumes Errant Prosecutors Will Be Disciplined by Their Offices or the Bar: Three Case Studies That Prove That Assumption Wrong*, 80 Fordham L. Rev. 537, 544-558 (2011), which is incorporated herein by reference. Notwithstanding the disclosure and recognition of the unconstitutional prosecutorial practices of the Bronx DA's Office that resulted from those cases, the Bronx County District Attorney's deliberately indifferent policies, customs, and practices continued.

142.    Further evidence of the BCDA unrepentant behavior, continued deliberate indifference to unconstitutional prosecutorial practices, since the time of Plaintiff's arrest into the present is borne out by additional numerous civil rights cases brought against the BCDA including but not limited to (Rentas v Ruffin, 816 F3d 214, 227-228 [2d Cir 2016]), (Bailey v City of NY, 79 F Supp 3d 424, 458 [EDNY 2015]) (Buari v City of NY, 530 F Supp 3d 356, 389-390 [SDNY 2021])(Egan v New York City, 2018 US Dist LEXIS 175510, at *61 [SDNY Oct. 10, 2018]) among others

143.    These Defendants deprived Plaintiff of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation. (*See* ¶¶ 17-24 *supra*).

144.    These Defendants performed the above-described acts under color of state law,

29

intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights. No reasonable officer in 2010 would have believed this conduct was lawful.

145.    Plaintiff is completely innocent of the false criminal charges brought against him by the defendants. The criminal case against Plaintiff was finally overturned on 10/19/21.

146.    As a direct and proximate result of Defendants' actions, Plaintiff was wrongfully convicted and imprisoned for TEN years and suffered the other grievous and continuing damages and injuries set forth above.

147.    The Bronx County District Attorney's policy, custom and practice of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of his Office's constitutional obligations foreseeably encouraged such violations to continue and was a substantial cause of the violations of Plaintiff's constitutional rights beginning with the initiation of a criminal prosecution against him without probable cause and continuing throughout his criminal proceedings and trial.

148.    The aforesaid policies, procedures, regulations, practices, and customs of Defendant City were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and Laws of the United States and in causing his damages.

149.    Under the principles of municipal liability for federal civil rights violations, the Bronx County District Attorney (or his authorized delegates) has final managerial responsibility for training, instructing, supervising, and disciplining attorneys and other employees in his office regarding their conduct in the prosecution of criminal matters, including but not limited to, their obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosure of exculpatory evidence to the defense, to refrain from offering false or misleading evidence, testimony mad argument during pretrial and trial proceedings, and to correct such

30

false or misleading evidence, testimony, and argument when they become aware of it.

150.    The Bronx County District Attorney, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to his Office's performance of its duties.

151.    The Bronx County District Attorney, at all relevant times, was and is an elected officer of Bronx County, one of the constituent counties of Defendant City; the Office was and is funded out of the City's budget; and the Office was and is a New York City agency.

152.    The Bronx County District Attorney was and is designated a "local officer," rather than a "state officer," under New York Public Officers Law § 2; New York has provided by statute (New York County Law §§ 53, 941) that Defendant City's constituent counties (including Bronx County), and hence Defendant City has liability for torts committed by County officers and employees, such as the Bronx County District Attorney and his assistants, and Defendant City represents such officers and employees in judicial proceedings and indemnifies them because they are City officials.

153.    The Bronx County District Attorney personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

154.    These policies, customs, and practices began with Robert Johnson's induction as BCDA in 1989, continued when Darcel Clark became BCDA in 2016, and persisted through at least 2017.

155.    During all times material to this Complaint, the City, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies,

procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public. The City policies, practices and customs in existence at the time of failing to supervise, train, instruct, and discipline police officers and encouraging their misconduct are further evidenced, *inter alia,* by the Mollen Commission's conclusion that the same tolerance for perjury and falsifications that is exhibited among police officers is exhibited among BCDAO prosecutors and investigators. The Commission specifically noted that "several former and current prosecutors acknowledged-- 'off the record' – that perjury and falsifications are serious problems in law enforcement that, though not condoned, are ignored." Mollen Commission, Report, p. 42

156.   The foregoing express or *de facto* policies, practices, and customs (including the failure to properly instruct, train, supervise, and/or discipline employees with regard thereto) were implemented or tolerated by policy making officials for the defendant City, including, but not limited to the BCDAO which knew to a moral certainty that such policies, procedures, regulations, practices and customs implicated issues that regularly arise in the investigation and prosecution of criminal cases; that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for the further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations as well as the incentives that employees have to make wrong choice; and that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him constitutional injury.

157.   By virtue of the foregoing, Defendant City is liable for having substantially caused the foregoing violations of Plaintiff's  constitutional rights and his resultant injuries.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 *Monell* Claim
***Monell* Unconstitutional Policy, Custom, or Pattern and Practice of Promoting, Facilitating, or Condoning Improper, Illegal and Unconstitutional Investigative Techniques and Failure to Supervise, Disciple, and Train**
*Against Defendant City of New York for the Actions and Omissions of the Police Officer Defendants and the NYPD*

158.    Plaintiff hereby incorporates by reference all the foregoing paragraphs and further alleges as follows:

159.    That Defendant Individual Police officers variously, herein by failing to undertake a constitutional adequate investigation prior to arresting Plaintiff, and then subsequently failing to intercede and or intervene in the malicious prosecution of the Plaintiff were behaving consistent with the unconstitutional training and supervision and defacto policies of the BCDA

160.    Prior to and at the time of the unconstitutional investigation, prosecution, and conviction, of Carlos Alvarez, the NYPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning, improper, illegal, and unconstitutional investigative techniques, including but not limited to the following: (a) the use of suggestive techniques and/or direct suggestion and/or coercive techniques in interviews and interrogations to obtain false statements and testimonies; (b) the use coercive tactics, intimidation, undue suggestion, and unlawful bribery to interfere with a criminal defendant's right to call witnesses; (c) the fabrication of inculpatory evidence; (d) the suppression of exculpatory and/or impeachment evidence; (d) the intentional failure to conduct adequate investigations of crimes; and (e) engaging in affirmative concealment and cover up of this type of misconduct.

161.    Prior to and at the time of the unlawful investigation, prosecution, and conviction of Carlos Alvarez, the NYPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise, discipline and train NYPD detectives

and officers in connection with fundamental investigative tasks implicating the constitutional rights of witnesses and suspects, including but not limited to conducting custodial interrogations and witness interviews.

162.    The NYPD's policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques, and its policy, custom, or pattern and practice of failing to adequately supervise, discipline, and train NYPD Department detectives and officers was reflected by the multiple acts of misconduct and illegality committed by multiple New York City Police detectives and supervisors in relations to multiple witnesses in the Alvarez investigation, as described above.

163.    The NYPD's policy, custom, or pattern and practice of investigative misconduct and failure to supervise and train was also reflected by several prior cases and investigations within the 40th precinct and beyond which, upon information and belief, were known to the NYPD defendants and policymakers prior to and during the Alvarez investigation. The misconduct committed in those cases was actually or constructively known to the NYPD supervisors and policymakers prior to and during the Plaintiff's investigation, and upon information and belief, NYPD supervisors and policymakers failed to train, supervise, discipline, or otherwise remediate detectives and officers in response to such notice or make any meaningful investigation into the above practices and techniques. The continued adherence to these unconstitutional municipal customs, practices and/or policies amounted to deliberate indifference to the constitutional rights of criminal defendants like Mr. Alvarez.

164.    Such unconstitutional municipal customs, practices and/or polices were the moving force behind the false testimonies, statements, unlawful bribery, and coercive tactics used against Plaintiff, causing his arrest, prosecution, and nearly 10 years of incarceration, as well as the other grievous injuries and damages set forth above.

165.   The existence of such unlawful *de facto* polices and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the NYPD and the City.

166.   Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officers and officials of the NYPD and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engaged in such practices, or otherwise properly train police officers with regard to constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs, and practices through their deliberate indifference to or reckless disregard of the effect of said, policies, customs, and practices upon the constitutional rights of persons in the City of New York.

167.   The City's policies and practices in existence at the time of the conduct complained of herein, which caused the plaintiff's injuries herein include, *inter alia,* the following:

  a.  The failure to properly supervise, train, instruct, and discipline police officers with regard to proper conduct and investigation at and in relation to a crime scene;

  b.  The failure to properly supervise, train, instruct, and discipline police officers with regard to the preparation of truthful accusatory instruments;

  c.  The failure to properly supervise, train, instruct, and discipline police officers with regard to the adequate evidence of crimes and to discipline those who unjustifiably charge and prosecute or continue to prosecute persons accused of crimes in the absence of probable cause;

  d.   The failure to properly supervise, train, instruct, and discipline police officers with regard to the exercise of their authority, including, without limitation, in regard to disclosure of exculpatory evidence;

e.  The failure to properly supervise, train, instruct, and discipline police officers with regard to proper methods of conducting interviews of witnesses and/or accused persons, and to discipline police officers who use improper methods to coerce and/or elicit false statements and/or confessions;

f.  The tacit acceptance of and encouragement of a code of silence wherein police officers regularly cover up police misconduct by refusing to report other officers' misconduct or by telling false and/or incomplete stories, *inter alia,* in sworn testimony, official reports, in statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau, and in public statements designed to cover for and and/or falsely exonerate accused police officers;

g.  Encouraging and/or failing to discipline officers for "testilying" and/or fabricating false evidence to bring about the police officers' preconceived perceptions or determinations of guilt

168.  The City policies, practices, and customs in existence at the time of failing to supervise, train, instruct, and discipline police officers and encouraging their misconduct are further evidence, *inter alia,* by the following:

a.  The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission"), dated July 7, 1994, states:

> In the face of this problem of corruption, the Department allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than devastating consequences of corruption itself. As a result, its corruption controls minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputation tainted – especially a Department that needs the public's

confidence and partnership to be effective.

A weak and poorly resourced anti-corruption apparatus
minimizes the likelihood of such taint, embarrassment and
potential harm to careers. Thus, there is a strong institutional
incentive to allow corruption efforts to fray and lose priority –
which is exactly what this Commission uncovered. This
reluctance manifested itself in every component of the
Department's corruption controls from command accountability
and supervision, to investigations, police culture, training, and
recruitment.

For at least the past decade, the system designed to protect
the Department from corruption minimized the likelihood of
uncovering it.

Mollen Commission Report, p. 2-3.

b.  Accordingly, in 1990, the Office of Special Prosecutor, which investigated

charges of police corruption was abolished.

c.  The Mollen Commission concluded that police perjury and falsification of official

records is probably the most common form of police corruption facing the

criminal justice system…

…Regardless of the motives behind police falsifications, what is
particularly troublesome about this practice is that it is widely
tolerated by corrupt and honest officers alike, as well as their
supervisors. Corrupt and honest officers told us that their supervisors
knew or should have known about falsified versions of searches and
arrests and never questioned them,

…What breeds this tolerance is deep-rooted perception among many
officers of all ranks within the Department that nothing is really
wrong with compromising facts to fight crime in the real world.
Simply put, despite the devastating consequences of police
falsifications, there is a persistent belief among many officers that it
is necessary and justified, even if unlawful. As one dedicated officer
put it, police officers often view falsification as, to use his words,
"doing God's work" – doing whatever it takes to get a suspected
criminal off the streets. This attitude is so entrenched, especially in
high-crime precincts, that when investigators confronted one
recently arrested officer with evidence of perjury, he asked in
disbelief, "What's wrong with that? They're guilty."

Mollen Commission Report, p. 36, 40-41.

d.  Since at least 1984, defendant City and the New York City Police Department have been on notice inadequate and that police officers joining the force, including, upon information and belief, individual defendant police officers herein, were disproportionately involved in misconduct and abuse. *See, e.g.,* Mayor's Advisory Committee on Police Management and Personnel Policy, Final Report, February 24, 1987.

e.  The City of New York Office of the Comptroller, in an unpublished report, found that the police often conduct inadequate investigations.

f.  Throughout the history of the New York City Police Department, numerous instances of corruption, misconduct, and other allegations of such, have occurred. Over 12,000 cases have resulted in lawsuit settlements totaling over $400 million during a five-year period ending in 2014. In 2019, taxpayers funded $68,688,423 as the cost of misconduct lawsuits, a 76 percent increase over the previous year, including about $10 million paid out to two exonerated individuals who had been falsely convicted and imprisoned

g.  Wikipedia link attached here shows over 224 incidents of Police misconduct resulting in over $400 Million dollars in losses to the Citizens of New York due to unconstitutional police misconduct during the same time period corresponding to Plaintiff's arrest and unconstitutional imprisonment https://en.wikipedia.org/wiki/New_York_City_Police_Department_corruption_and_ misconduct

h.  The money paid out by the City in damages to alleged victims of police misconduct rose from approximately $7 million in 1988, to $13.5 million in 1992, to $24 million

in 1994. For example, the Bureau of Law & Adjustment settled pre-litigation six

wrongful conviction claims involving a cumulative 86 years of wrongful

incarceration for $25 million.

i.  According to pro publica Settlements and payouts for police misconduct cases <u>totaled</u>

<u>$121 million last year</u>, up from about $85 million the year before, according to an analysis

of city data by the Legal Aid Society, the city's primary provider of indigent legal services.

(The sharp increase was largely attributable to six payouts of $10 million or more

stemming from decades-old wrongful conviction cases.) A Washington Post analysis of

settlement data last year showed that, between 2010 and 2020, <u>more than 5,000 NYPD</u>

<u>officers were named in two or more claims</u>, accounting for 45% of New York City

taxpayer dollars spent on misconduct

cases..https://www.propublica.org/article/nyc-nypd-police-misconduct-settlements-protests

j.  In the vast majority of police misconduct cases that result in verdicts or

substantial settlements for victims, defendant City imposes no discipline, either

before or after resolution in court, almost never reopens an investigation

previously conducted after such resolution, and sometimes promotes the abusive officer to a position of greater authority despite the judicial resolution.

k. Former New York City Police Commission Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

169.   Upon information and belief, police officers receive no training regarding how to conduct interrogations in a manner that will prevent false statements, and, in fact, are indoctrinated in the use of false promises, threats, and intimidation.

170.   Upon information and belief, defendant City and its agency, the New York City Police Department, failed to effectively screen, hire, train, supervise, and discipline their police officers, including the defendant police officers herein, for lack of truthfulness, and for their failure to protect citizens from the unconstitutional conduct of other police officers, thereby permitting and allowing the defendant police officers to be in a position to elicit false testimony from witnesses and to fabricate evidence sufficient to secure convictions in violation of federal and state constitutional rights, and/or to permit these actions to take place with those officers' knowledge of consent.

171.   Upon information and belief, the defendant police officers herein were the subject of prior civilian and departmental complaints of misconduct that gave notice to or should have given notice to defendant City and its agency, the New York City Police Department, that the defendant police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the conduct complained of by the plaintiff herein.

172.   As a result of the foregoing conscious policies, practices, customs and/or usages, defendant City and its agency, the New York City Police Department, permitted and allowed the

employment and retention of individuals as police officers whose individuals circumstances place the public or segments thereof at substantial risk of being the victims of preconceived determinations of guilt.

172. The plaintiff's injuries were a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein and in existence at the time of the incidents complained of herein and of the knowledge and repeated failure of the defendant City and the New York City Police Department to properly supervise, train, and discipline their police officers.

173. Defendant City knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution without limitation, the plaintiff's freedom of deprivation of liberty without due process of the law.

174. All of the acts by the police defendants described above were carried out pursuant to policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant City and its agency, the New York City Police Department.

176. Defendant City and the NYPD, by their policy-making agents, servants, and employees, authorized, sanctioned, and/or ratified the police defendants' wrongful acts; and/or failed to prevent to stop these acts; and/or allow or encouraged these acts to continue.

177. The actions of police defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegation without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons, and to substantially interfere with

the accused's right to call witnesses in their defense by impermissible means such as

intimidation, coercion, and other abuses of authority.

178. Such unconstitutional municipal customs, practices and/or polices were the moving force

behind the false testimonies, statements, unlawful bribery, and coercive tactics used against Mr.

Alvarez causing his arrest, prosecution, and over ten years of incarceration, as well as the other

grievous injuries and damages set forth above.

**SIXTH  CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Fourteenth Amendment Deprivation of Liberty Without Due Process of Law and**
**Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory**
**and Impeachment Evidence, and Deliberately Failing to Conduct a**
**Constitutionally Adequate Investigation**
**Against all Defendants**

173.   The Plaintiff hereby incorporates by reference each and every preceding paragraphs 1

through 125 of this Third Amended Complaint as though fully plead and re-alleged in their

entirety below.

174.   Said individually named Defendants, acting individually and in concert, deprived Plaintiff

of his clearly established constitutional right, under the Fourteenth Amendment of the United

States Constitution, to a fair trial.

175.   These Defendants deprived Plaintiff of his right to a fair trial by fabricating inculpatory

evidence and intentionally using unduly suggestive interrogation procedures and/or direct

suggestion and/or coercion to fabricate and obtain false witness statements inculpating Plaintiff

fair trial by withholding material exculpatory and impeachment evidence from Plaintiff's

defense counsel and the Court. (*See* ¶ 36 *supra*).

176.   Mr Alvarez has sufficiently pleaded a claim for denial of a fair trial based on an alleged

fabrication of evidence. As discussed above, Mr Alvarez alleges that Officer Soto fabricated

evidence and  forwarded this information to the Bronx DA, who then together secured the

indictment. He also alleges that Officers RIVERA, KATZ and MUHAMMAD, despite having

reason to believe that Mr Alvarez had committed the robbery, nonetheless failed to intercede

and or intervene to prevent officer SOTO and DA Kim from presenting false testimony against Alvarez at trial, which resulted in Alvarez's conviction. These assertions, taken as true, plausibly allege the elements of a Section 1983 fair trial claim

177.   (Buari v City of NY, 530 F Supp 3d 356, 389-390 [SDNY 2021])

178.   These Defendants deprived Plaintiff of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation.

179.   These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights. No reasonable officer in 2010 would have believed this conduct was lawful.

180.   Plaintiff is completely innocent of the false criminal charges brought against him by the defendants. The criminal case against Plaintiff was finally overturned on 10/19/21.

181.   As a direct and proximate result of Defendants' actions, Plaintiff was wrongfully convicted and imprisoned for TEN years and suffered the other grievous and continuing damages and injuries set forth above.

**WHEREFORE**, the Plaintiff demand judgment against the defendants in an amount exceeding the monetary jurisdictional limits of any and all lower Courts which would otherwise have jurisdiction, in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action and any other such relief as this honorable Court may deem just, fair and proper, to wit.

   a.   Compensatory damages in the sum which equals or exceeds the jurisdictional limits this Court;
      b.   Punitive damages where permitted in the sum which exceeds the jurisdictional limits of this Court;
      c.   Pursuant to §1988 An award of reasonable attorney's fees, costs and disbursements;
      d.   Plaintiff requests a trial by jury of all issues involved in this complaint;
      e.   Such other and further relief as this Court may deem just, meet and proper under the circumstances.

Dated: New York New York
   May 23, 2023

         _____/S/_____

         REHAN NAZRALI, Esq.
         299 Broadway, 17th Floor
         New York, NY 10007
         Tel: 646-331-9378