UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CARLOS ALVAREZ,

                      Plaintiff,                       22-cv-8689 (PKC)

         -against-                         OPINION AND
                                                         <u>ORDER</u>

THE CITY OF NEW YORK, ALEXIS SOTO, in
her individual and official capacity, JONATHAN
KATZ, in his individual and official capacity,
CARLOS RIVERA, in his individual and official
capacity, MUHAMMAD ABUHAIKAL, in his
individual and official capacity, and JENNIFER
KIM, in her individual and official capacity,

                         Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        On May 15, 2010, the vehicle in which plaintiff Carlos Alvarez and three

companions were riding was hit from behind by another vehicle that fled the scene. (Fifth

Amended Complaint ("FAC"), ECF 59 at ¶ 10.) Alvarez and his companions followed the car,

and when it stopped, they approached the driver and passenger in the vehicle. (Id. ¶ 12.) They

returned to their vehicle after a brief conversation with the driver and passenger of the other car

and drove away, whereupon the vehicle in which Alvarez was travelling was stopped and he

alleges he was arrested without probable cause. (Id. ¶¶ 13-14.) One officer of the New York

City Police Department ("NYPD"), Alexis Soto, is alleged to have fabricated a claim of a

knifepoint robbery by Alvarez of the driver and passenger of the other vehicle. (Id. ¶ 16.)

        At the trial of Alvarez, Officer Soto is alleged to have delivered false testimony.

(<u>Id</u>. ¶ 24). Officer Soto, according to the FAC, became "hysterical" on the stand when

1

confronted by Alvarez's lawyer, and the Assistant District Attorney prosecuting the case purposefully prompted a mistrial.  (Id. ¶ 32).  At his second trial, a jury found Alvarez guilty of Robbery in the First Degree.  (Id. ¶ 38).  In 2021, his conviction was reversed after an appellate court determined that his retrial violated constitutional prohibitions against double jeopardy.  (Id. ¶ 47).

Alvarez brings section 1983 claims against the City of New York (the "City"), four NYPD Officers—Alexis Soto, Jonathan Katz, Carlos Rivera, and Muhammad Abuhaikal[1]— in their individual and official capacity, and a Bronx County Assistant District Attorney, Jennifer Kim, in her individual and official capacity, alleging that they deprived him of rights under various constitutional provisions.  (Id. ¶¶ 5-9).  42 U.S.C. § 1983.  Defendants move to dismiss all claims except for two claims against Officer Soto.  For the reasons that will be explained, the Court grants the defendants' motion.

BACKGROUND

The Court accepts the well-pleaded allegations in the Fifth Amended Complaint as true and draws all reasonable inferences in favor of Alvarez.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On May 15, 2010, Alvarez was driving in a car with three companions when his car was struck from behind by another driver.  (FAC ¶ 10).  The driver drove away without stopping and providing his insurance information.  (Id.).  Alvarez followed the driver, and when the driver stopped at an intersection, Alvarez and his companions got out of their car to confront

---

[1] Throughout the Fifth Amended Complaint, Alvarez incorrectly refers to Officer Muhammad Abuhaikal as Officer Abuhaikal Muhammad.  (ECF 61, at 1 n.1).  The Court uses the defendant's correct name in its Opinion and Order.

the driver that struck them.  (Id. ¶¶ 12-13).  Alvarez had a "brief conversation" with the driver and then returned to his car and drove away.  (Id. ¶¶ 13-14).

Shortly thereafter, Alvarez and his companions were pulled over and arrested by NYPD Officers Soto, Katz, Rivera, and Abuhaikal.  (Id. ¶ 13).  Alvarez and his companions were "forcefully extracted from their vehicle, handcuffed, and made to kneel execution style on the street" while the officers had their guns drawn.  (Id. ¶ 14).  The officers interviewed the driver of the other car who told the officers that Alvarez and his companions were trying to steal his car by threatening him with a knife.  (Id. ¶ 18).  Officer Soto then "somehow found a knife and abackpack [sic] with possessions worth no more than $80."  (Id. ¶ 19).  The officers did not interview Alvarez or his companions.  (Id. ¶ 15).  Alvarez was arrested and transported to the 40th Precinct.  (Id. ¶¶ 15, 21).

There, Officer Soto told a detective that while on patrol, "she observed a 'male Hispanic in a vehicle with a knife and he was pointing the knife at the victim.  That the other three men were trying to force themselves into the vehicle and when they saw the police, they forcibly removed [the victim's] property and began to walk to their vehicle.'"  (Id. ¶ 16).  Alvarez asserts that "[t]here was no evidence to prove arresting officer SOTO's allegations that Plaintiffs and his companions were following the hit-and-run driver they wanted to 'carjack the vehicle.'"  (Id. ¶ 17).

On June 21, 2010, Alvarez was arraigned in Supreme Court, Bronx County, on 21 counts, including robbery, assault, unlawful imprisonment, and criminal possession of a weapon.  (Id. ¶ 22).  Alvarez's case proceeded to trial.  At trial, Officer Soto testified that she had "first encountered [Alvarez] and his companions when they were in their vehicle," allegedly contradicting her statement to the detective at the 40th Precinct that she observed Alvarez and his

companions in the victim's vehicle. (Id. ¶ 25). Officer Soto also stated that she did not wear gloves when she handled the knife or backpack and neither she nor her supervisors "requested any scientific tests" to determine if Alvarez had handled the knife and backpack. (Id. ¶¶ 27-29). According to the FAC, Assistant District Attorney Kim realized that the jury was going to acquit Alvarez because "key witnesses could not identify [Alvarez] in court and arresting officer Soto becamehyperactive [sic] and hysterical when she was confronted by the defense attorney regarding the fact that [Officer] Soto did not preserve the integrity of the evidence (the knife)." (Id. ¶ 30). She then "deliberately provoked a mistrial" by "suborning perjury" when she "knowingly allowed [Officer] Soto to perjure herself regarding the fabricated crime and evidence to the court." (Id. ¶¶ 31-32). The complaint further alleges that the court later learned Assistant District Attorney Kim had "instructed the prosecuting witness to identify [Alvarez] by showing her a single picture of [Alvarez]." (Id. ¶ 34). The trial ended in a mistrial. (Id. ¶ 33).

A second trial took place, and on December 13, 2013, Alvarez was found guilty of robbery in the first-degree. (Id. ¶¶ 37-38). The other charges resulted in a dismissal or an acquittal. (Id.). Alvarez states that he "was incarcerated from the day of his arrest in 2010 until 2021 when the court reversed his convictions because it determined [Alvarez's] retrial violated constitutional prohibitions against double jeopardy." (Id. ¶ 47).

Alvarez sued New York City, NYPD Officers Soto, Katz, Rivera, and Abuhaikal, and Assistant District Attorney Jennifer Kim under 42 U.S.C. § 1983. He asserts 1) a malicious prosecution claim against the City, Assistant District Attorney Kim, and Officers Soto, Katz, Rivera, and Abuhaikal; 2) a failure to intervene claim against Officers Katz, Rivera, and Abuhaikal; 3) an "unconstitutional conviction" claim against New York City and Officer Soto[2];

---

[2] Alvarez's Fifth Amended Complaint purports to assert the "unconstitutional conviction" claim against the Bronx District Attorney's Office. The Bronx District Attorney's Office is no longer a defendant in this action. (See ECF

4) a claim alleging a "civil rights conspiracy" against Officers Soto, Katz, Rivera and Abuhaikal and Assistant District Attorney Kim; 5) municipal liability claims pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) against the City, and 6) a claim against all individual defendants for depriving him of his clearly established constitutional right to a fair trial.  Defendants have moved to dismiss all claims except "the federal malicious prosecution and fair trial claims against defendant Soto."  (ECF 61, at 9).

DISCUSSION

I.     Applicable Law

        To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, the Court draws all reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust Litigation., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).  Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them.  Iqbal, 556 U.S. at 678.  The Court examines only the well-pleaded factual allegations, and then determines whether they plausibly give rise to an entitlement to relief.  Id. at 678-79.

        Section 1983 does not expressly recognize any immunities.  Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004).  But, the Supreme Court has held that section 1983 is "to be read in harmony with general principles of tort immunities and defenses rather than in

---

56).  Accordingly, the Court does not consider the claim of "unconstitutional conviction" against the Bronx District Attorney's Office.

derogation of them." Imbler v. Pachtman, 424 U.S. 409, 418 (1976).  The Court has recognized

two kinds of immunity to claims under section 1983—absolute and qualified.  Buckley v.

Fitzsimmons, 509 U.S. 259, 268-69 (1993).

  "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all

acts, regardless of motivation, associated with his function as an advocate."  Dory v. Ryan, 25

F.3d 81, 83 (2d Cir. 1994).  State prosecutors are entitled to absolute immunity for their conduct

"intimately associated with the judicial phase of the criminal process," including their actions "in

initiating a prosecution and in presenting the State's case."  Imbler, 424 U.S. at 430.  "Once the

court determines that the challenged prosecution was not clearly beyond the prosecutor's

jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing

the prosecution, regardless of any allegations that his actions were undertaken with an improper

state of mind or improper motive."  Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.

2005).

  Qualified immunity, in contrast, balances "the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably."  Pearson v.

Callahan, 555 U.S. 223, 231 (2009).  The doctrine of qualified immunity "shields officials from

civil liability so long as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Mullenix v. Luna, 577

U.S. 7, 11 (2015) (per curiam) (internal quotations omitted).  "The dispositive question is

whether the violative nature of *particular* conduct is clearly established."  Id. at 12 (internal

quotation omitted).  This specificity is particularly important in the Fourth Amendment context

in which "[i]t is sometimes difficult for an officer to determine how the relevant legal

doctrine . . . will apply to the factual situation the officer confronts."  Saucier v. Katz, 533 U.S. 194, 205 (2001).  For that reason, qualified immunity will protect "all but the plainly incompetent or those who knowingly violate the law."  Ziglar v. Abassi, 582 U.S. 120, 152 (2017) (internal quotation omitted).  If "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context, the officer is entitled to qualified immunity."  Dancy v. McGinley, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation omitted).

Absolute and qualified immunity "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).  For that reason, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  It is appropriate to address the issue of absolute immunity before considering whether the plaintiff has sufficiently alleged a constitutional violation.  Pinaud v. County of Suffolk, 52 F.3d 1139, 1148 n.4 (2d Cir. 1995); see also Imbler, 424 U.S. at 419 n.13 ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.").  Likewise, "[b]ecause qualified immunity is an immunity from suit—not merely an immunity from judgment—assertions of qualified immunity should be addressed as early as possible in the judicial process."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  "The Supreme Court has made clear that qualified immunity can be established by the facts alleged in a complaint."  Garcia v. Does, 779 F.3d 84, 97 (2d Cir. 2015).

II.     Assistant District Attorney Kim is Entitled to Absolute Immunity from Alvarez's Claims

The FAC alleges that Assistant District Attorney Kim initiated the prosecution against Alvarez based on evidence she knew was insufficient to obtain a conviction and then

purposefully obtained a mistrial.  Specifically, Assistant District Attorney Kim "realized that the jury was going to acquit [Alvarez] because key witnesses could not identify [him] in court and arresting officer Soto becamehyperactive [sic] and hysterical when she was confronted by the defense attorney regarding the fact that SOTO did not preserve the integrity of the evidence (the knife) that [Alvarez] allegedly used in the crime of Robbery in the First Degree."  (FAC ¶ 30). Kim then deliberately provoked a mistrial by knowingly allowing Officer Soto to "perjure herself regarding the fabricated crime and evidence to the court."  (Id. ¶¶ 31-32).

Initiating the prosecution against Alvarez, even based on allegedly scant evidence, and conducting the direct examination of Officer Soto during Alvarez's trial "lie[s] at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process." Bernard, 356 F.3d at 503 (collecting cases).  Assistant District Attorney Kim is entitled to absolute immunity for all acts alleged in the FAC, and the Court dismisses all claims against her.

III.    Officers Katz, Rivera, and Abuhaikal are Entitled to Qualified Immunity from Alvarez's
        Malicious Prosecution and Failure to Intervene Claims[3]

The "gravamen" of a malicious prosecution claim is "the wrongful initiation of charges without probable cause."  Thompson v. Clark, 596 U.S. 36, 43 (2022).  To state a claim for malicious prosecution under section 1983, the plaintiff must show "(1) the commencement or continuation of a criminal proceeding against her; (2) the termination of the proceeding in her favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."  Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotations omitted).

Alvarez has adequately pleaded the first two requirements of the claim.  The Bronx District Attorney's Office commenced a criminal proceeding against him that terminated

---

[3] The defendants have not moved to dismiss the malicious prosecution claim against Officer Soto.

in his favor.  See Thompson, 596 U.S. at 49 ("[W]e hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.")

No claim for malicious prosecution can survive, however, if probable cause for the prosecution existed.  Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).  If a grand jury returned an indictment against a defendant, it gives rises to a presumption that probable cause for the prosecution existed.  Rentas v. Ruffin, 816 F.3d 214, 220 (2d Cir. 2016).  "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially."  Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (internal quotation omitted).  This requires the plaintiff to "establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  Rios v. City of New York, 687 F. App'x. 88, 90 (2nd Cir. 2017) (summary order).  A "plaintiff's mere conjecture and surmise are insufficient to overcome the presumption of probable cause resulting from the indictment."  Debrosse v. City of New York, 739 F. App'x. 48, 50 (2d Cir. 2018) (summary order) (internal quotation omitted).

Alvarez fails to rebut the presumption that probable cause for the prosecution existed.  The FAC alleges that Officer Soto "falsely stated" to a detective of NYPD's 40th Precinct that she observed a "male Hispanic in a vehicle with a knife and he was pointing the knife at the victim.  That the other three men were trying to force themselves into the vehicle and when they saw the police they forcibly removed c/v's property and began to walk to their

vehicle." (FAC ¶ 16). The FAC does not allege that Officer Soto testified falsely in the grand jury proceeding. Likewise, it does not allege that Officer Soto's allegedly false statement to a detective on the night of Alvarez's arrest was introduced at the grand jury proceeding or transmitted to the prosecutor before the grand jury proceeding. Indeed, it does not address the grand jury proceeding at all. In Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004), the Second Circuit concluded that a plaintiff had failed to rebut the presumption of probable cause created by a grand jury's indictment when the content of the grand jury proceeding was unknown. See also Savino v. City of New York, 331 F.3d 63, 74-75 (2d Cir. 2003). The Court concludes that Alvarez has failed to rebut the presumption of probable cause created by the grand jury's indictment.

Even assuming that Alvarez had successfully rebutted the presumption that probable cause for the prosecution existed, the Court concludes that Officers Katz, Rivera, and Abuhaikal are entitled to qualified immunity. Of course, "[f]reedom from malicious prosecution is a constitutional right that has long been clearly established." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). However, "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014). The FAC alleges that these officers participated in Alvarez's arrest, but does not allege that they participated in Alvarez's prosecution at any point afterwards. (FAC ¶¶ 13-15). Accordingly, if "officers of reasonable competence could disagree" on whether probable cause for these officers' role in Alvarez's prosecution existed—that is, whether probable cause to arrest Alvarez existed—Officers Katz, Rivera, and Abuhaikal are shielded from suit by qualified immunity. See Betts, 751 F.3d at 83 ("Plaintiff's . . . malicious prosecution claim[] therefore turn[s] on whether the defendant officers' probable cause determination was objectively

10

reasonable—that is, whether there was 'arguable' probable cause to arrest.").  "Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation omitted).

The FAC alleges that Officers Soto, Katz, Rivera, and Abuhaikal "approached the complaining victim and took his statement" without interviewing Alvarez or his companions. (FAC ¶ 15).  The victim told the officers that Alvarez and his companions were trying to steal his car and other possessions by threatening him with a knife.  (Id. ¶ 18).  The officers then "somehow found a knife and abackpack [sic] with possessions worth no more than $80."  (Id. ¶ 19).  Based on these facts, it was objectively reasonable for Officers Katz, Rivera, and Abuhaikal to conclude that probable cause to arrest Alvarez existed.  The victim provided information to the officers at the scene that Alvarez and his companions had committed the offense, and "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitnesses." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation omitted).  The victim's statement to the officers was then corroborated by Officer Soto's discovery of a knife and a backpack with the driver's possessions in it.

The FAC alleges that had the officers interviewed him or his companions about the incident, "they would have realized that there was no probable cause to arrest [him]."  (FAC ¶ 15).  However, "[i]t is well established that a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Garcia v. Does, 779 F.3d 84, 93 (2d Cir. 2015) (internal quotation omitted).  Even if the officers had

interviewed Alvarez, they would simply have faced two competing narratives of events: Alvarez's explanation that he was confronting a driver that had hit his car and driven away and the driver's statements—corroborated by Officer Soto's discovery of the knife and backpack—that Alvarez was trying to steal his car and other possessions.  Based on the totality of circumstances, it was objectively reasonable for Officers Katz, Rivera, and Abuhaikal to conclude that probable cause supported Alvarez's arrest, entitling them to qualified immunity.

The FAC also alleges that Officers Katz, Rivera, and Abuhaikal are liable under section 1983 for failing to intervene to prevent the malicious prosecution of Alvarez.  (ECF 58 ¶ 99).  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  A police officer cannot be held liable in damages for failure to intervene unless the failure "permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known" and did so "under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights."  Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation omitted).

The FAC alleges that the officers "had reason to know . . . that a malicious prosecution and unconstitutional imprisonment was being made and occurring thereto in their presence . . . ."  (ECF 58 ¶ 99).  Assuming that Alvarez was maliciously prosecuted by someone, the FAC fails to plausibly allege that it was "objectively unreasonable" for Officers Katz, Rivera, and Abuhaikal to believe that Officer Soto's conduct did not violate Alvarez's clearly established constitutional rights.  As alleged in the FAC, Officers Katz, Rivera, and Abuhaikal were present

12

at Alvarez's arrest, but played no role in his subsequent prosecution.  And as discussed above, it was objectively reasonable for these officers to conclude that probable cause supported Alvarez's arrest.  Their "failure to intervene" thus did not occur under circumstances in which it was objectively unreasonable for them to believe that Officer Soto's arrest of Alvarez violated his clearly established constitutional rights.

V.    Alvarez Fails to State a Civil Rights Conspiracy Claim
       Against Officers Soto, Katz, Rivera, and Abuhaikal[4]

In order to survive a motion to dismiss his section 1983 conspiracy claim, Alvarez must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  "[C]onspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence."  Id. (internal quotation omitted).  However, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (internal quotation omitted).  In order to plead a conspiracy, Alvarez must plead "some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation omitted).

The FAC alleges that Officers Soto, Katz, Rivera, and Abuhaikal and Assistant District Attorney Kim agreed "to deprive [Alvarez] of his clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false

---

[4] Alvarez also asserts a claim under section 1983 for an "unconstitutional conviction."  (FAC ¶ 110.) This claim is duplicative of his malicious prosecution claim.  See Heck v. Humphrey, 512 U.S. 477, 484-86 (1994).  For that reason, it will be dismissed.

imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and also deprived Plaintiff of his right to a fair trial." (FAC ¶ 126). It alleges that Officers Soto, Katz, Rivera, and Abuhaikal "agreed to deprive [Alvarez] of his clearly established Fourth Amendment right to be free from unreasonable searches and seizures, prior to making the arrest and after receiving information from the witness. This agreement was implicit." (Id. ¶ 127). In furtherance of this conspiracy, the FAC alleges that the defendants "falsely arrest[ed] and imprison[ed] [Alvarez] knowing that they lacked probable cause; fabricat[ed] inculpatory evidence in reports, statements, and pretrial communications with the prosecution, inculpating [Alvarez]; suborn[ed] perjury during hearings and trials, and [i]ntentionally or with deliberate indifference fail[ed] to comply with their duty to disclose Brady material during the pendency of the case." (Id. ¶ 130). Alvarez has pleaded only that Officers Katz, Rivera, and Abuhaikal were present with Officer Soto at the scene of his arrest. He failed to plead, except in the most conclusory fashion, that an agreement, either tacit or explicit, to violate Alvarez's constitutional rights existed between any or all of the defendants. Accordingly, this claim will be dismissed.

V.    **Alvarez Fails to State a Claim Against Officers Katz, Rivera, and Abuhaikal for Denial of his Right to a Fair Trial**

The Due Process Clause of the Fourteenth Amendment guarantees state criminal defendants the right to a fair trial. Cone v. Bell, 556 U.S. 449, 451 (2009). A claim alleging the deprivation of the right to a fair trial is thus distinct from a claim alleging a malicious prosecution in violation of the Fourth Amendment. Garnett v. Undercover Officer C0039, 838 F.3d 265, 278 (2d Cir. 2016) ("[F]air trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims."). To prevail on this claim, the plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffe[red] a

14

deprivation of life, liberty, or property as a result." Barnes v. City of New York, 68 F.4th 123, 129 (2d Cir. 2023) (internal quotation omitted). Fabricated information includes a police officer's own account of his observations of the alleged criminal activity. Id.

Defendants Officers Katz, Rivera, and Abuhaikal have moved to dismiss this claim, and the Court concludes that the FAC fails to state a denial of a fair trial claim.[5] "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004). The FAC fails to allege that Officers Katz, Rivera, or Abuhaikal were personally involved in the alleged deprivation of Alvarez's right to a fair trial. It alleges that only Officer Soto fabricated her account of witnessing Alvarez threatening the other driver with a knife while his companions attempted to force their way into the driver's car. (FAC ¶ 16). It does not allege that Officers Katz, Rivera, or Abuhaikal fabricated any information, or played any role, in the prosecution of Alvarez. This claim will thus be dismissed against Officers Katz, Rivera, and Abuhaikal for failing to plead their personal involvement.

VI.    Alvarez Has Failed to Plausibly Allege a Claim for Monell Liability

A municipal liability claim under section 1983 must be premised upon an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam). Because the defendants have not moved to dismiss the malicious prosecution (Count One) and deprivation of the right to a fair trial (Count Six) claims against Officer Soto, the Court assumes for the sake of analysis that a constitutional violation has been adequately pleaded. Alvarez asserts two section 1983 claims against the City under Monell, one premised upon the

---

[5] The FAC also asserts this claim against Assistant District Attorney Kim. (FAC ¶ 195-96). As discussed, Assistant District Attorney Kim is entitled to absolute immunity from this claim. Officer Soto has not moved to dismiss this claim.

actions of the Bronx District Attorney's Office and the other premised upon the actions of NYPD officers.

In Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality is a "person" that can be held liable under section 1983. At the same time, the Court concluded that a municipality may not be found liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691.  A municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor.  Id.

To state a claim, Alvarez must allege that "action pursuant to official municipal policy" caused his injury.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).  Additionally, a municipality's failure to supervise or train its employees can give rise to Monell liability when a municipal policy can be "inferred from evidence of deliberate indifference of supervisory officials to such abuses." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012).

The Supreme Court has cautioned that deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Commissioners v. Brown, 520 U.S. 397, 410 (1997).  Indeed, a section 1983 claim "is at its weakest" when it is based on alleged failure to train or supervise.  Greene v. City of New York, 742 F. App'x. 532, 536 (2d Cir. 2018) (summary order).  Proving deliberate indifference "generally requires a plaintiff to prove that the constitutional violation underlying his claim was preceded by '[a] pattern of similar constitutional violations.'" Id. (quoting Connick, 563 U.S. at 61).  Additionally, for a municipal

16

actor to have disregarded a known or obvious consequence of his action, the plaintiff cannot point to "contemporaneous or subsequent" violations.  Connick, 563 U.S. at 63 n.7.

The Second Circuit recently held that New York City is the proper defendant for constitutional violations resulting from allegedly unlawful policies of the Queens County District Attorney's Office.  Bellamy v. City of New York, 914 F.3d 727, 761 (2d Cir. 2019).  In Bellamy, the City had argued that it could not be held liable for any constitutional harms inflicted by the policies of the Queens County District Attorney's Office because the City was not responsible for those policies.  Id. at 756-57.  The Second Circuit recounted its precedent on the subject, noting that "when a Monell claim challenges policies of the City of New York's 'constituent counties,' the City is a proper defendant."  Id. at 758.  It held that "the actions of county prosecutors in New York are generally controlled by municipal policymakers for purposes of Monell, with a narrow exception . . . being the decision of whether, and on what charges, to prosecute.  Thus, in this case, the rule from these cases requires the conclusion that the conduct [the plaintiff] challenges is a result of municipal rather than state policymaking."  Id. at 759.

Following Bellamy, district courts in this Circuit have consistently concluded that New York City may be held liable for the policies of the District Attorney's offices of its constituent counties.  See, e.g., Fraser v. City of New York, 2021 WL 1338795, at *11 (S.D.N.Y. Apr. 9, 2021) ("The conclusion to be drawn from these cases is that the City can be liable under Monell for policies of the Manhattan District Attorney's Office."); O'Hara v. City of New York, 2019 WL 2326040, at *8 (E.D.N.Y. May 31, 2019) ("Second Circuit precedent plainly teaches that the City may be held liable under Monell for the alleged [Kings County District Attorney's Office] conduct at issue.").  "It is anomalous that under Monell and New York law, while the City has no control over what happens in the District Attorney's office respecting prosecutions, it

must pay the bill if the prosecutor violates <u>Monell</u>." <u>Bailey v. City of New York</u>, 79 F. Supp. 3d 424, 453 (E.D.N.Y. 2015). Despite this anomaly, the question for this Court is whether Alvarez has adequately pleaded that the Bronx District Attorney's Office had a "policy or custom" that was unconstitutional.

The FAC does not identify a formal policy adopted by the City or actions directed by the City's "authorized decisionmakers." Alvarez alleges that the City is liable for his malicious prosecution because the Bronx District Attorney's Office had a persistent and widespread practice "amounting to deliberate indifference to the constitutional rights of persons" of 1) initiating criminal prosecutions that were not based on probable cause, 2) using "false, misleading or unreliable evidence, testimony, statements or arguments during criminal proceedings," 3) failing to "correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument whenever such misconduct is discovered to have occurred," 4) failing to timely and fully disclose material to the defense as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 450 U.S. 152 (1972) and 5) "knowingly making false and misleading arguments during summation." (FAC ¶ 158).

As an initial matter, two of the alleged practices of the Bronx District Attorney's Office are, on their face, unrelated to Alvarez's prosecution. Alvarez alleges the Bronx District Attorney's Office had a custom of failing to comply with its requirements under <u>Brady</u> and <u>Giglio</u> and a custom of "knowingly making false and misleading arguments during summation." He does not allege, however, that the prosecutors failed to comply with their disclosure obligation or made knowingly false or misleading arguments during summation in his prosecution.

With respect to the alleged practices that could conceivably relate to Alvarez's prosecution, he has not plausibly alleged a persistent or widespread practice that establishes a custom or a pattern of similar constitutional violations that New York City's policymakers were deliberately indifferent to.  Alvarez has pleaded in "the civil rights litigation in Ramos v. City of New York, 285 A.D.2d 284 (1st Dept 2001) . . . discovery of Bronx DA's Office personnel records, together with deposition testimony, showed that in approximately 72 cases where courts had found prosecutorial misconduct occurred . . . officials could only identify one prosecutor from between 1975 and 1996 who had been disciplined."  (FAC ¶ 169).  Alvarez also states that "further evidence of the Bronx County District Attorney's deliberate indifference to prosecutorial misconduct was uncovered in the companion lawsuits Poventud v. City of New York, 07 Civ. 3998 (DAB)(THK) (U.S.D.C. S.D.N.Y.) and Maldonado v. City of New York, No. 17568- 2004 (N.Y. Sup. Ct. Bronx Co. filed June 14, 2004), which also involved the knowing use of false evidence and argument and committing Brady violations by the Bronx DA's Office."  (FAC ¶ 170).

The FAC does not specify what the instances of "prosecutorial misconduct" uncovered during discovery in these cases were.  Without specifying what the instances of "prosecutorial misconduct" were, this allegation does not establish that the Bronx District Attorney's Office had a custom of, or was deliberately indifferent to, prosecutors initiating criminal proceedings that were not based on probable cause, using false evidence, or failing to correct false evidence.  Alvarez also cites four "civil rights cases brought against the [Bronx District Attorney's Office]" that show its "continued deliberate indifference to unconstitutional prosecutorial practices." (FAC ¶ 172).  The Bronx District Attorney's Office's conduct after Alvarez's prosecution, however, does not necessarily establish a pattern of conduct that *preceded*

19

Alvarez's prosecution.  See Connick, 563 U.S. at 63 n.7.  Additionally, the FAC does not plead

the total number of prosecutions conducted by the Bronx District Attorney's Office during

Alvarez's surveyed time period of 1975 to 2024, but the small number of incidents "uncovered"

during discovery and the four cited cases represent such a small fraction of such prosecutions

that the Court cannot conclude they evidence a "persistent and widespread pattern."  See Nunez

v. City of New York, 735 F. App'x. 756, 760-61 (2d Cir. 2018) (summary order) (affirming the

dismissal of a section 1983 claim against the City because 48 alleged instances of prosecutorial

misconduct by the Bronx District Attorney's Office over 23 years did not support a reasonable

inference of a "custom" or deliberate indifference).

       The FAC also relies on the conclusory statement that "aforesaid policymaking

officials" had received "credible allegations" of similar misconduct substantiated by unnamed

judicial decisions.  (FAC ¶ 160).  Alvarez then proceeds with further speculation about the

internal operations of the Bronx District Attorney's Office and its practices "encouraging

prosecutors to win at any cost."  (Id. ¶ 162-68).  These vague and conclusory allegations will be

disregarded.  See Vasquez v. City of New York, 20-cv-4641 (ER), 2023 WL 8551715, at *5

(S.D.N.Y. Dec. 11, 2023).

       Alvarez's Monell claim against New York City based on the NYPD is similarly

deficient.  Alvarez claims that the NYPD "maintained a custom and pattern of promoting,

facilitating, or condoning, improper, illegal and unconstitutional investigative techniques" that

included the following: using coercive tactics in interviews and to interfere with a defendant's

right to call witness, fabricating inculpatory evidence, intentionally failing to adequately

investigate crimes, and concealing this misconduct.  (FAC ¶ 135).

His factual showing in support of this claim is insufficient to plausibly plead a widespread or persistent pattern of unconstitutional investigative techniques. The lengthy quotation from The Report on the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department was written in 1994, approximately sixteen years before Alvarez's arrest and does not plausibly support a pattern or practice of the New York Police Department existed at Alvarez's arrest. (FAC ¶ 147). He also points broadly to the large number of settlements New York City has paid in cases allegedly involving "corruption, misconduct, and other allegations of such," and directs the Court to a Wikipedia link on "New York City Police Department corruption and misconduct." (Id.). This allegation does not show facts that point to a pattern, practice or custom of the City. Thus, Alvarez has failed to plausibly allege a pattern of similar constitutional violations to either establish a municipal policy or put New York City on notice.

CONCLUSION

For the reasons discussed above, the Court grants the defendants' motion to dismiss the complaint in part. Count One is dismissed against all defendants except for Officer Soto. Counts Two, Three, and Four are dismissed. The Monell claims against the City relating to the conduct of the Bronx District Attorney's Office and the NYPD, both denoted as the "Fifth Cause of Action," are dismissed. Count Six is dismissed against all defendants except for Officer Soto. The Clerk of Court is respectfully requested to terminate the motion. (ECF 60.)

SO ORDERED.

P. Kevin Castel
United States District Judge

21

Dated: New York, New York
       March 15, 2024