

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**Carolyn K. Depoian**
*Special Federal Litigation Division*
*212-356-2358*
*Cdepoian@law.nyc.gov*

November 17, 2025

By ECF
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

        Re:    Alvarez v. Soto, 22-cv-08689 (PKC)

Your Honor:

      I am an attorney in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for defendant Police Officer Alexis Soto in this action. Defendant writes this pre-motion letter regarding her anticipated Rule 56 motion, which will be dispositive of this case. Fact discovery closed in this matter on November 3, 2025, and there is no conference currently scheduled.

**A.**    **Background of This Action**

      Plaintiff Carlos Alvarez initiated this lawsuit on October 13, 2022, and following several amendments of the complaint, filed the operative Fifth Amended Complaint ("FAC") on December 2, 2022. On May 15, 2024, the Court granted the then-defendants' motion to dismiss in part, and two claims remain in this case, both brought against Officer Soto: a § 1983 claim for malicious prosecution and § 1983 claim for the denial of the right to a fair trial. See Opinion and Order, Civil Docket Sheet No. 66 at p. 21.

      The record evidence in this case shows that on the morning of May 15, 2010, defendant Alexis Soto along with Officers Jonathan Katz, Carlos Rivera and Muhammad Abuhaikal were in a marked police van when the officers observed a white minivan make a U-turn in the vicinity of Bruckner Boulevard and Willis Avenue in the Bronx, New York. A man on the side of the road standing outside of a parked gray minivan flagged down PO Soto's marked vehicle and pointed out the minivan. The man was later learned to be Jose Rendon. The police officers then stopped the white minivan that had just made the U-turn, which had four men inside, including plaintiff. Jose Rendon and his wife, Vanessa Veloso, informed the officers that while their vehicle was stopped at a red light on Bruckner Boulevard, the white minivan

stopped behind them. They further informed the officers that plaintiff entered Mr. Rendon's vehicle, pulled out a knife, waved it at Mr. Rendon and told him to drive.[1] Mr. Rendon refused and the two began struggling. He informed the officers that when he screamed for help, plaintiff exited Mr. Rendon's vehicle and returned to the white minivan. Mr. Rendon then exited his vehicle, and observed the white minivan make a U-turn back towards Willis Avenue, and flagged down the officers.  Mr. Rendon's son's bookbag was missing from his car afterwards.

At the scene after the officer stopped the white minivan, Mr. Rendon identified plaintiff as the perpetrator. Officer Soto recovered a book bag containing a pair of jeans and swimming goggles that belonged to Mr. Rendon's son as well a knife from inside the white minivan. Plaintiff and his three companions were placed under arrest and charged with robbery in the first degree and other related charges.

Officer Soto testified at the grand jury that she saw the white minivan make a U-turn and was flagged down by Mr. Rendon, who was yelling "stop them, stop them."  Plaintiff's first criminal trial resulted in a mistrial and plaintiff was found guilty of first degree robbery on December 13, 2013 following a second trial.  Plaintiff completed his sentence on November 13, 2020 and was released.  His motion to vacate his judgment pursuant to NY CPL §440.00 was granted on double jeopardy grounds in 2021, after his release.

There is a document (hereafter "the DD5") in the New York Police Department investigative file written by now retired Detective Annette Francesquini, which states that on May 15, 2010, Detective Annette Fracesquini interviewed Officer Soto, who informed her that she observed plaintiff and his criminal co-defendants commit the robbery.  Neither Officer Soto nor Detective Fancesquini recall speaking about this incident and there is no evidence that Officer Soto reviewed this document or transmitted it to anyone.

**B.      Argument**

    **I.      <u>Plaintiff's Malicious Prosecution Claim Fails</u>**

The elements of a § 1983 malicious prosecution claim are: "(1) that a defendant initiated a prosecution against the plaintiff; (2) that the defendant lacked probable cause to believe the proceeding could succeed; (3) that the defendant acted with malice; and (4) that the prosecution was terminated in a plaintiff's favor . . . [and] (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Searles v. Pompilio,* 652 F. Supp. 2d 432, at 443, (S.D.N.Y July 23, 2009).

First,  there is no evidence that Officer Soto initiated the prosecution against plaintiff.  To "initiate" a criminal proceeding means more than "mere reporting of a crime to police and giving testimony." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010).  Because there is a presumption that prosecutors exercise independent judgment in deciding whether to pursue a prosecution, a plaintiff must demonstrate that a defendant "distorted the process by

---

[1] Jose Rendon observed three other individuals with plaintiff but their precise roles in the crime are not material to this motion.

which plaintiff was brought to trial." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015). Here, there is no such evidence.

Moreover, because plaintiff was indicted, there is a presumption of probable cause for the prosecution that here, plaintiff cannot overcome. *See Rentas v. Ruffin*, 816 F.3d 214, at 220 (2nd Cir. 2016). Officer Soto testified at the grand jury that she observed the white minivan make a U-turn and then recklessly drive away. She did not testify that she observed the robbery. There is no evidence that Officer Soto testified falsely before the grand jury, or that any false statement was presented at that proceeding. *See also Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 628-29 (S.D.N.Y. 2015) (holding that a defendant's alleged fabrication was "irrelevant to the claim for malicious prosecution" because it was never presented to the grand jury); *Felmine v. City of New York*, No. 09-CV-3768, 2011 U.S. Dist. LEXIS 111553, 2011 WL 4543268, at *12 (E.D.N.Y. Sept. 29, 2011) ("[W]here the grand jury indictment is procured without any involvement of the alleged falsehoods, those falsehoods cannot be considered a proximate cause of the resulting prosecution."); see also Opinion and Order, Civil Docket Sheet No. 66 at p. 10. Plaintiff's malicious prosecution claim must be dismissed.

### II. Plaintiff's Denial of Right to Fair Trial Claim Premised on Detective Francesquini's Report Fails

"A person is denied the right to a fair trial when an investigating official provides to the prosecutor fabricated evidence that is likely to influence a jury's decision, and the plaintiff suffers a deprivation of liberty as a result." *See Perez v. Duran,* 962 F. Supp. 2d 533, at 543 (2d Cir. 2013) (quoting *Jovanovic v. City of New York*, 486 F. App'x 149, at 152 (2d Cir. 2012) (summary order)). Unlike plaintiff's malicious prosecution claim, a fair trial claim based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause to arrest the plaintiff. *See Garnett v. UC C0039*, 838 F.3d 265, 277-78 (2d Cir. Jun 7, 2016). However, here, plaintiff's fabrication of evidence claim, which is premised on the DD5 authored by Detective Francesquini, nonetheless fails against Officer Soto because 1) there is no evidence that Officer Soto knowingly fabricated the statement to Detective Francesquini; 2) there is no evidence that whether or not Officer Soto witnessed the crime influenced the prosecutor's decision to pursue criminal charges against plaintiff given the totality of the circumstances; and 3) there was no deprivation of liberty caused by the statement in the DD5.

#### A. There is No Evidence that Officer Soto Knowingly Fabricated the Statement in the DD5.

There is no dispute that the statement attributed to Officer Soto in the DD5, that she observed the crime, is false. However, the law requires *only* that liability attaches to "false statements and omissions that are . . . made knowingly." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015). Neither Detective Francesquini nor Officer Soto recall conversing with each other on May 15, 2010, and thus neither can testify as to whether this was created as the result of a paperwork error or a miscommunication between the two officers. In addition, there is no evidence that Officer Soto reviewed the DD5 or otherwise verified its contents. Thus, plaintiff cannot show that Officer Soto "knowingly" informed Detective Francesquini that she personally observed this crime.

B.  There is No Evidence that the Statement in the DD5 Influenced Prosecutors to Pursue the Criminal Case

Fabricated evidence is material when it may affect "the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action" or when it could influence "the prosecutor's . . . assessments of the strength of the case." *Garnett*, 838 F.3d at 277. Importantly, this inquiry "does not turn on whether the fabricated evidence is in fact *used* during a trial; it focuses rather on whether the fabricated evidence, if introduced during trial, could be expected to influence the jury's decision-making process." *Ekukpe v. Santiago*, 823 F. App'x 25, 31 (2d Cir. 2020) (summary order).  The false statement that was allegedly made by Officer Soto and recorded by Detective Annette Fracesquini could not have influenced the prosecutor's decision to pursue charges, or affected the prosecutor's assessment of the case.  Whether or not Officer Soto observed the carjacking would not necessarily strengthen the case, especially where the victims identified plaintiff as one of the perpetrators and other evidence of the crime was recovered from plaintiff's vehicle.  Moreover, Officer Soto informed prosecutors and later testified that she first saw the white minivan as it did a U-turn. *See Torres v. City of New York*, 2017 U.S. Dist. LEXIS 158883, *18 (E.D.N.Y. 2017)(no reasonable juror could find that a statement or misstatement mattered in the prosecutors' decision-making where a statement made in a DA screening sheet was prepared by the DA after a phone call with the defendant, and where, similar to here, the defendant never saw it, reviewed it, or otherwise verified any of the information in it.)

C.  The Statement in the DD5 Did Not Cause Plaintiff any Deprivation of Liberty

Where there exists probable cause for an arrest, to prevail on a claim for fabrication of evidence, a plaintiff must establish that "the fabricated evidence cause[d] some further deprivation" beyond the arrest supported by probable cause. *Ganek v. Leibowitz,* 874 F.3d 73, 91 (2d Cir. 2017)(internal quotation marks omitted).  In other words, a plaintiff is required to show "a *causal connection* between the fabrication and the deprivation." *Snead v. City of New York*, 463 F. Supp. 3d 386, 395 (S.D.N.Y. 2020).

Here, plaintiff simply cannot show any causal connection between the statement in the DD5 and the deprivation of liberty plaintiff suffered.  There is "no indication that the alleged fabrication caused plaintiff's deprivation because it was not relied upon before the grand jury or in the criminal complaint." *Roland v. City of New York*, 2024 U.S. Dist. LEXIS 97689, *67-68 (S.D.N.Y. May 31, 2024) *see also Torres v. City of New York*, 16 Civ. 6719, 2017 U.S. Dist. LEXIS 158883, 2017 WL 4325822, at *6 (E.D.N.Y. Sept. 27, 2017) (finding a lack of causation because "nothing in the criminal complaint . . . supports even an inference that" the fabrication "factored into [prosecutors'] decision to bring charges.")  Plaintiff's prosecution was premised on the information about the crime provided by Mr. Rendon and other evidence related to the arrest.  Because there is no evidence to suggest that the statement that Officer Soto observed the carjacking did not cause any deprivation of plaintiff's liberty, there is no issue of triable fact as to plaintiff's fair trial claim.

**C.** **Proposed Briefing Schedule**

      Defendant's motion to be filed:      December 22, 2025

      Plaintiff's opposition to be filed:      January 22, 2026

      Defendant's reply to be filed:      February 5, 2026

Thank you for your consideration of the above.

      Respectfully submitted,

      /s/ Carolyn K. Depoian
      Carolyn K. Depoian
      Senior Counsel

cc:    All counsel of record *(by ECF)*