UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CARLOS ALVAREZ,

Plaintiff,

22-cv-08689 (PKC)

-against-

OPINION AND ORDER

ALEXIS SOTO,

Defendant.
-----------------------------------------------------------x

CASTEL, Senior District Judge

Plaintiff Carlos Alvarez brings this action against Officer Alexis Soto of the New York City Police Department asserting claims under 42 U.S.C. § 1983 for malicious prosecution and the denial of the right to a fair trial. Officer Soto moves for summary judgment on Alvarez's claims. Alvarez cross moves for summary judgment on his fair trial claim. For reasons to be explained, Soto's motion will be granted, and Alvarez's motion will be denied.

BACKGROUND

The following facts are taken from materials submitted in connection with the present motion. Where a dispute of facts is noted, the non-movant's version is accepted for the purpose of deciding the motion at hand. Undisputed facts are accepted as true and all facts are construed "in the light most favorable to the [non-movant, as applicable.]" Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

In the version of events presented by plaintiff Carlos Alvarez, on May 15, 2010, he was riding in a white minivan with three other individuals near Willis Avenue and the Bruckner Boulevard in the Bronx. (Pl.'s 56.1 ¶ 2; Nazrali Decl. Ex. D (ECF 92-4 at 93, 103); see

Def.'s 56.1 ¶ 5.) According to Alvarez, the minivan was struck from behind by a vehicle driven by Jose Rendon. (Pl.'s 56.1 ¶ 3.) Rendon then changed lanes, drove ahead, and stopped at a traffic light in front of the minivan. (Pl.'s 56.1 ¶ 4.) Alvarez and one or two other individuals exited the minivan to obtain Rendon's identification for insurance purposes, and on approach, Rendon "became aggressive and threatening." (Pl.'s 56.1 ¶¶ 5, 6; Nazrali Decl. Ex. D (ECF 92-4 at 95–97).) Alvarez then retreated to the minivan, which made a U-turn. (Pl.'s 56.1 ¶¶ 7, 8; see Def.'s 56.1 Counterstatement ("CS") ¶¶ 7, 8.)

Rendon's account of the incident is quite different and is adopted by defendant Soto. According to Rendon, an individual from the minivan, whom he later identified as Alvarez, entered his vehicle, pulled a knife, waved it at him, and told him to drive. (Def.'s 56.1 ¶¶ 11, 14.) Rendon also told officers that his son's backpack was missing from his car after Alvarez exited. (Def.'s 56.1 ¶ 13.)

Around this time, Soto and several other police officers were nearby in a marked police van. (Def.'s 56.1 ¶ 5; see Pl.'s 56.1 ¶ 9.) Soto testified that Rendon was gesturing at the minivan and yelling something to the effect of "stop them." (Pl.'s 56.1 ¶¶ 9, 10; Def.'s 56.1 ¶¶ 6, 7; Nazrali Decl. Ex. D (ECF 92-4 at 100).) Soto could not recall whether she or another officer in the police van first heard Rendon, (Pl.'s 56.1 ¶ 11), but after making a U-turn, the police van pulled the minivan over. (Pl.'s 56.1 ¶¶ 11–13; see Def.'s 56.1 ¶ 14.)

Alvarez asserts that the officers exited the police van with their guns drawn. (Pl.'s 56.1 ¶ 20.) Soto could not recall "when weapons were drawn, who ordered them drawn, or the sequence of those events." (Pl.'s 56.1 ¶ 22.) According to Alvarez, he was "forcibly removed from the vehicle and placed on his knees with a gun pointed at his head." (Pl.'s 56.1 ¶ 21.) Soto testified that after speaking with Rendon, she searched the minivan and found a knife and a bag

containing jeans and swimming goggles belonging to Rendon's son. (Pl.'s 56.1 ¶¶ 30, 31; Def.'s 56.1 ¶ 15; Depoian Decl. Ex. E (ECF 89-5 at 7).) Alvarez and his companions were arrested at the scene. (Pl.'s 56.1 ¶¶ 17, 18, 27, 28; Def.'s 56.1 ¶ 16.)

A report (the "DD5") authored by Detective Annette Francesquini, which describes a same-day interview with Soto, "attributes to Officer Soto a statement that she observed [Alvarez] holding a knife to Rendon." (Pl.'s 56.1 ¶ 33; Def.'s 56.1 ¶ 25; Nazrali Decl. Ex. A (ECF 92-1).) Soto, however, did not see what transpired between Rendon and Alvarez, (ECF 90 at 13 ("There is no dispute that the statement attributed to Officer Soto in the DD5, that she observed the crime, is not true.")), and has testified that she does not recall making a statement to that effect, (Pl.'s 56.1 ¶ 35). She has also testified that the DD5 "sounds more like the [complaining victim's] recount of what happened more than what I stated" and that she did not recall reviewing the DD5, verifying its contents, or transmitting it to anyone. (Pl.'s 56.1 ¶ 40; Pl.'s 56.1 CS ¶ 27.) Soto and Francesquini have testified that they do not recall speaking about the incident back in 2010. (Pl.'s 56.1 CS ¶ 26; Def.'s 56.1 ¶ 26.)

Alvarez was charged with several offenses in a criminal complaint signed by Soto, (Def.'s 56.1 ¶¶ 17, 18; Depoian Decl. Ex. G (ECF 89-7)), and later indicted, (Def.'s 56.1 ¶ 20, Depoian Decl. Ex. J (ECF 89-10)). Officer Soto testified before the grand jury. (Depoian Decl. Ex. E (ECF 89-5).) After his first criminal trial ended in a mistrial, Alvarez was convicted by a jury of first-degree robbery in a second trial. (Def.'s 56.1 ¶¶ 21, 22; Nazrali Decl. Ex. D (ECF 92-4 at 130–31).)

Officer Soto testified at both trials. (<u>See</u> Nazrali Decl. Ex. D (ECF 92-4 at 112, 130); Fifth Amended Compl't ¶ 30.) In a deposition, Alvarez stated, "I don't remember precisely" after being asked "did Officer Soto testify in court that she saw the robbery?"

(Nazrali Decl. Ex. D (ECF 92-4 at 112).) When asked specifically whether Soto testified at the second trial "that she saw you rob Mr. Rendon[,]" Alvarez responded, "I don't think so" and "I do not remember." (Id. (ECF 92-4 at 130.) Neither party has submitted transcripts from the first or second trial.

Alvarez initiated this action in 2022. (Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1.) The Court has dismissed Alvarez's claims against the City of New York, Assistant District Attorney Jennifer Kim, and Officers Jonathan Katz, Muhammad Abuhaikal, and Carlos Rivera. (ECF 66.) Officer Soto now moves for summary judgment on the claims against her and as noted, Alvarez has cross-moved for summary judgment on the fair trial claim.

LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of America Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks omitted).

The moving party bears the initial burden of demonstrating that no genuine factual dispute exists with respect to each material element of the claim. Vermont Teddy Bear Co. v. 1-800-Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden,

its opponent "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Insurance Co., 804 F.2d 9, 12 (2d Cir. 1986).

A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015) (quoting Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)). It is not appropriate for the Court to make credibility assessments or resolve conflicting versions of events presented. Id.

DISCUSSION

I. Malicious Prosecution

Alvarez brings a claim for malicious prosecution based on the fact that the DD5 erroneously suggested that Soto had been an eyewitness to the robbery. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160–61 (2d. Cir. 2010) (internal citations omitted); see Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997) (explaining that malicious prosecution claims implicate the Fourth Amendment right to be free from unreasonable seizures of the person resulting from judicial proceedings). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff [by the defendant]; (2) termination of the

proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 F.3d at 161 (internal quotation marks omitted) (quoting Murphy, 118 F.3d at 947).

There is no dispute that the initial trial after Alvarez's arrest terminated in his favor. Soto urges that Alvarez, however, has not submitted evidence from which a reasonable factfinder could conclude that she initiated the criminal proceedings, that the prosecution was not supported by probable cause, or that she was motivated by actual malice.

With respect to the probable cause element, "[a] grand jury indictment creates a rebuttable presumption that probable cause exists to prosecute." Heredia v. City of New York, 24-cv-1185, 2025 WL 959473, at *2 (2d Cir. Mar. 31, 2025) (summary order) (citing McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006)). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution[.]" Frost v. New York City Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (quoting Stansbury v. Wertman, 721 F.3d 84, 94–95 (2d Cir. 2013)).

Because Alvarez was indicted by a grand jury, there is a presumption of probable cause, which he may rebut only by "establish[ing] that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)). The purported factual issues that Alvarez raises do not bear on this inquiry. First, Alvarez notes that Soto testified she could not remember certain details from the scene such as when the officers drew their weapons and which officer first heard Rendon yelling "stop them." Second, Alvarez points out that "Soto testified that the 'initial search of the van . . . to look for the weapon' occurred only after she spoke with [Rendon] and after he told her 'what

transpired[.]'" (ECF 91 at 7.) Third, Alvarez states that he never saw a knife being removed from the minivan.

In Alvarez's telling, these observations preclude summary judgment because they bear on Soto's credibility and intent and show that Soto used the robbery charge as a post-hoc justification for the officers having drawn their weapons. But none of his observations create a triable issue of fact relating to whether "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Colon, 60 N.Y.2d at 83. A failure to recall certain details years after the fact[1] is not, alone, evidence of bad faith. It is also unclear why it is material that Soto did not search the minivan until after speaking with Rendon. And Alvarez's statement about never seeing the knife being removed from the minivan is contradicted by his own statement in the same deposition that "there's no way that I was able to see [the search of the minivan] because we were underneath with our hands up in our . . . head[.]" (Nazrali Decl. Ex. D (ECF 92-4 at 104).)

Perhaps more importantly, Alvarez's claim centers on the DD5, and there is no evidence that the DD5 was presented to the grand jury. There is also no evidence that Soto's grand jury testimony contained the same erroneous suggestion that Soto was an eyewitness to the interaction between Alvarez and Rendon. Indeed, no such suggestion is present in the excerpts of that testimony submitted by Soto. (See Depoian Decl. Ex. E (ECF 89-5).)

Relatedly, Alvarez has not come forward with any evidence that Soto acted with actual malice, or "commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Perez v. Duran, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) (Koeltl, J.) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 573

[1] Soto's deposition in this case took place on October 21, 2025. (Nazrali Decl. Ex. B (ECF 92-2).)

(2d Cir. 1996)). Alvarez urges that because Soto "may have created and forwarded false testimony to prosecutors" in the form of the DD5, there are "triable issues as to whether the prosecution was initiated or continued in bad faith[.]" (ECF 91 at 19–20.)

But as mentioned, there is no evidence that the error in the DD5 was fabricated or anything other than inadvertent. Neither Soto nor Detective Francesquini recall conversing about the incident. And speculation and surmise aside, there was no apparent motive for Soto to claim that she saw a knife held to Rendon because Rendon's account as told to Soto, coupled with Soto finding a knife and Rendon's son's property in the minivan in which Alavarez was riding, was more than ample to support a finding of probable cause. "At most, [Alvarez's] allegations permit an inference that [the NYPD] performed subpar police work . . . not an inference of conduct rising to the level of fraud, perjury, suppression of evidence, or other bad faith." Delamota v. City of New York, 683 F. App'x 65, 66 (2d Cir. 2017) (summary order).

Soto's motion will be granted as to the malicious prosecution claim.

## II. Fair Trial Based on Fabricated Evidence

Alvarez also claims that Soto violated his Fourteenth Amendment right to a fair trial by fabricating the DD5. "To succeed on a fair trial claim based on fabricated evidence, 'a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result.'" Ferguson v. City of New York, 23-cv-1315, 2025 WL 1793890, at *3 (2d Cir. June 30, 2025) (summary order) (quoting Barnes v. City of New York, 68 F.4th 123, 128 (2d Cir. 2023)).

Alvarez's fair trial claim suffers from similar fatal defects as his malicious prosecution claim. "[A] fair trial claim based on fabricated evidence requires a plaintiff to prove that a defendant's use of inaccurate information was 'knowing, as opposed to mistaken.'" Davis-Guider v. City of Troy, 23-589, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024) (summary order) (quoting Barnes, 68 F.4th at 129). Alvarez offers no evidence to this end. His argument instead "relies on the speculation that because" Soto may have contributed to inaccuracies in the DD5, she "must have fabricated evidence." Id. "Without any proof of scienter, however, that assumption is not a reasonable inference." Id. (emphasis omitted).

Further, while the DD5 contained erroneous information that, if used at trial, could have been damaging to Alvarez, the mere fact of its existence could not, itself, deprive him of a fair trial. But Alvarez makes no claim, and there is no evidence in the summary judgment record showing, that the DD5 was received into evidence at trial or that Soto claimed while testifying at trial to have seen Alvarez put a knife to Rendon.

Accordingly, Soto's motion will also be granted as to Alvarez's fair trial claim. The Court does not find it necessary to reach the issue of qualified immunity as to either the fair trial claim or the malicious prosecution claim.

## III. Cross-Motion for Summary Judgment on Fair Trial Claim

Alvarez's cross-motion fails for the same reason the Court is granting Soto's motion on the fair trial claim. Alvarez's motion will be denied.

CONCLUSION

For the reasons described above, Soto's motion is GRANTED. Alvarez's cross motion is DENIED. The Clerk is respectfully directed to terminate the motion at ECF 87.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 20, 2026